ROBERT J. HANNA, Bar No. 66105
robert.hanna@bbklaw.com
MATTHEW L. GREEN, Bar No. 227904
matthew.green@bbklaw.com
WHITNEY R. BLACKHURST, Bar No. 295239
whitney.blackhurst@bbklaw.com
BEST BEST & KRIEGER LLP
655 West Broadway, 15th Floor
San Diego, California 92101
Telephone:  (619) 525-1300
Facsimile:  (619) 233-6118

Attorneys for Defendant
OMNI HOTELS MANAGEMENT
CORPORATION

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALLEN HARVEY ABOLAFIA,<br><br>              Plaintiff,<br><br>        v.<br><br>OMNI HOTELS MANAGEMENT CORPORATION; and DOES 1 TO 20, inclusive,<br><br>              Defendants. | Case No.  19-cv-01923-W-KSC<br>Judge: Hon. Thomas J. Whelan<br><br>DEFENDANT OMNI HOTELS MANAGEMENT CORPORATION'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF ALLEN HARVEY ABOLAFIA'S MOTION FOR SUMMARY JUDGMENT<br><br>Date:    July 20, 2020<br>Dept.:   Courtroom 3C (3rd Floor) |

1
2

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ...............................................................................6

II.  BACKGROUND FACTS ....................................................................8

    A.  PLAINTIFF'S LA COSTA MEMBERSHIP ....................................8

    B.  PLAINTIFF'S INJURY ON THE LEGENDS COURSE ...................9

III.  LEGAL STANDARD .......................................................................10

IV.  ARGUMENT ...................................................................................11

    A.  PLAINTIFF IS NOT ENTITLED TO JUDGMENT AS A MATTER OF LAW ON OMNI'S CONTRACTUAL ASSUMPTION OF THE RISK DEFENSE ......................................11

        1.  Mere Membership In A Club Binds A Member To The Club's Rules and Regulations, Including A Release Therein. ...............................................................................12

        2.  Plaintiff's Action Is Barred By The Release Contained In The Club's Rules And Regulations. .........................................14

        3.  Walking From A Golf Cart To The Tee Box Is An Inherent Part Of Golf. ....................................................16

        4.  The Release Covers Both Passive And Active Negligence. ....17

        5.  No Signature On Plaintiff's Membership Application Was Necessary To Bind Plaintiff To The Release In The Club's Rules and Regulations. ..........................................21

        6.  There Is A Genuine Issue Of Material Fact Regarding Whether Plaintiff Signed The Membership Application. .........23

    B.  PLAINTIFF IS NOT ENTITLED TO JUDGMENT AS A MATTER OF LAW ON OMNI'S PRIMARY ASSUMPTION OF THE RISK DEFENSE ....................................................23

    C.  PLAINTIFF IS NOT ENTITLED TO JUDGMENT AS A MATTER OF LAW ON OMNI'S COMPARATIVE NEGLIGENCE DEFENSE ...............................................28

    D.  PLAINTIFF IS NOT ENTITLED TO JUDGMENT AS A MATTER OF LAW ON OMNI'S THIRD PARTY DEFENSE ........29

V.  CONCLUSION ...............................................................................30

**Federal Cases**

*Anderson v. Liberty Lobby, Inc.*
    477 U.S. 242 (1986) ........................................................................... 12

*Celotex Corp. v. Catrett*
    477 U.S. 317 (1986) ........................................................................... 11

*Fernandez v. Corporacion Insular De Seguros*
    79 F.3d 207 (1st Cir. 1996) ............................................................... 30

*Firman v. Life Ins. Co. of North America*
    684 F.3d 533 (5th Cir. 2012) ............................................................ 11

*Hahn v. Town of Haverstraw, N.Y.*
    No. 11 CV 1635(VB), 2013 WL 1680179 (S.D.N.Y. Apr. 3, 2013) ........... 17, 28

*Martin v. Metropolitan Yacht Club, Inc.*
    388 Fed. Appx. 6 (1st Cir. 2010) ................................................... 14, 15

**State Cases**

*Anderson v. Fitness Int'l, LLC*
    4 Cal. App. 5th 867 (2016) ................................................................ 12

*Barbato v. Hollow Hills Country Club*
    14 A.D. 3d 522 (N.Y. App. Div. 2005) ........................................... 18, 28

*Benedek v. PLC Santa Monica*
    104 Cal. App. 4th 1351 (2002) ......................................................... 19

*Bockelmann v. New Paltz Golf Course*
    284 A.D. 2d 783 (N.Y. App. Div. 2001) ....................................... 27, 28

*Bryant v. Town of Brookhaven*
    135 A.D. 3d 801 (N.Y. App. Div. 2016) ....................................... 27, 28

*Burnett v. Chimney Sweep*
    123 Cal. App. 4th 1057 (2004) ...................................................... 18, 19

*City of Santa Barbara v. Superior Court*
    41 Cal. 4th 747 (2007) ...................................................................... 20

MEM. OF P. & A. IN OPP'N TO
MOT. FOR SUMM. J.
19-cv-01923-W-KSC

*Cobb v. Ironwood Country Club*
   233 Cal. App. 4th 960 (2015)......................................................................13, 22

*Cohen v. Five Brooks Stable*
   159 Cal. App. 4th 1476 (2008)...........................................................................19

*Egeth v. County of Westchester*
   2016 A.D. 2d 502 (N.Y. App. Div. 1994).............................................18, 25, 28

*Eriksson v. Nunnink*
   233 Cal. App. 4th 708 (2015)...........................................................12, 13, 19, 20

*Grant v. Long*
   33 Cal.App.2d 725 (1939).....................................................................................23

*Hass v. RhodyCo Productions*
   26 Cal. App. 5th 11 (2018)..................................................................................19

*King v. Grand Chapter of Rhode Island*
   919 A.2d 991 (R.I. 2007)....................................................................................13

*Knight v. Jewett*
   3 Cal. 4th 296 (1992)....................................................................................24, 26

*Li v. Yellow Cab Co.*
   13 Cal. 3d 804 (1975).........................................................................................29

*Mangan v. Engineer's Country Club, Inc.*
   79 A.D. 3d 706 (N.Y. App. Div. 2010)..........................................................18, 28

*Parsons v. Arrowhead Golf, Inc.*
   874 N.E.2d 993 (Ind. Ct. App. 2007)............................................................26, 28

*Pfenning v. Lineman*
   947 N.E. 2d 392 (Ind. 2011)..........................................................................25, 26

*Pollock v. Crestview Country Club Ass'n*
   41 Kan. App. 2d 904 (2009)..........................................................................13, 22

*Post v. Belmont Country Club, Inc.*
   60 Mass. App. 645 (2004).........................................................................*passim*

*Rossmoor Sanitation, Inc. v. Pylon, Inc.*
   13 Cal. 3d 622 (1975).........................................................................................21

1
2

*Saenz v. Whitewater Voyages, Inc.*
226 Cal. App. 3d 758 (1990) ........................................................................... 12

3
4

*Sanchez v. Bally's Total Fitness Corp.*
68 Cal. App. 4th 62 (1998) ....................................................................... 19, 20

5
6

*Shin v. Ahn*
42 Cal. 4th 482 (2007) .............................................................................. 24, 25

7
8

*Simon v. Hamlet Windwatch Dev., LLC*
120 A.D. 3d 657 (N.Y. App. Div. 2014) ............................................... 26, 27, 28

9

*Simon v. Hamlet Windwatch Dev., LLC*
No. 360672010, 2013 WL 10154235 (N.Y. Super. Feb. 14, 2013) ................... 27

10
11

*Spokoiny v. Washington State Youth Soccer Ass'n*
128 Wash. App. 794 (2005) ................................................................. 13, 14, 22

12
13

*Valley Circle Estates v. VTN Consolidated, Inc.*
33 Cal. 3d 604 (1983) ................................................................................... 31

14
15

*Vita Planning and Landscape Architecture, Inc. v. HKS Architects, Inc.*
240 Cal. App. 4th 763 (2015) ........................................................................ 23

16

**State Statutes**

17

Cal. Civ. Code, § 1584 .................................................................................. 23

18

Cal. Civ. Code, § 1589 .................................................................................. 23

19
20

**Rules**

21

Fed. R. Civ. P. 14 ......................................................................................... 30

22

Fed. R. Civ. P. 26 ......................................................................................... 24

23

Fed. R. Civ. P. 56 ................................................................................... 11, 30

24

Fed. R. Civ. P. 56(a) .................................................................................... 11

25

**Other Authorities**

26

CACI 451 ...................................................................................................... 12

27
28

Defendant Omni Hotels Management Corporation ("Omni") respectfully submits the following memorandum of points and authorities in opposition to Plaintiff Allen Harvey Abolafia's ("Plaintiff") motion for summary judgment.

# I.

# INTRODUCTION

This action arises out of a slip and fall injury that occurred while Plaintiff, an avid golfer and longtime member of the Club at La Costa, was golfing on the South Course of the Omni La Costa Resort and Spa. In August 2018, Plaintiff drove his golf cart over a concrete bridge located on the golf cart path between the sixth hole and seventh tee box, a bridge that Plaintiff had previously crossed nearly 100 times since it was constructed in May 2017. Rather than cross the entire bridge to park his golf cart, Plaintiff parked the cart near the bottom of the downward slope of the bridge and exited the cart in that location. After retrieving his club from the back of the cart, Plaintiff proceeded to walk toward the seventh hole. Without looking down to see where he was stepping, Plaintiff stepped over the curb of the golf cart path and landed his foot in the culvert and sustained a torn Achilles tendon.

Instead of accepting any responsibility for his injury, Plaintiff filed suit against Omni in state court in April 2019, alleging claims for negligence and premises liability and seeking $500,000 in damages. (Doc. 1-2, Ex. A at 4-5; Green Decl., Ex. A at 9:2-5.) Omni subsequently removed the action to this Court in October 2019, based on diversity jurisdiction. (Doc. 1 ¶¶ 4-6.)

In its First Amended Answer, which was filed in late April 2020, Omni asserts six affirmative defenses: (1) contractual assumption of risk, (2) primary assumption of risk, (3) comparative negligence, (4) no liability for third parties, (5) waiver, and (6) release. (Doc. 12.) Contrary to the arguments in his motion, Plaintiff is not entitled to judgment as a matter of law regarding any of Omni's affirmative defenses.

With regard to Omni's contractual assumption of risk, waiver, and release defenses, the Club at La Costa's rules and regulations include a release, under which

1  any member who uses the golf course does so "at his/her own risk" and must

2  "indemnify, defend and hold harmless" Omni "from any and all loss, cost, claim,

3  injury, damage or liability sustained or incurred by him/her, resulting there from

4  and/or resulting from any act or omission of [Omni], … or arising out of or incident

5  to … use of the [golf course]." (Green Decl., Ex. C, Ex. 5 at 29-30, Art. VII.) Plaintiff

6  attempts to circumvent the release by claiming that he did not sign his membership

7  application when he joined the Club. Regardless of whether his signature appears on

8  the application, Plaintiff's mere membership in the Club, and his acceptance of the

9  benefits thereof, binds him to the Club's rules and regulations, including the release

10 therein. Plaintiff also confirmed at his deposition that he understood, as a member of

11 the Club, he was subject to its rules and regulations. Moreover, even assuming

12 *arguendo* Plaintiff's signature was required, which it is not, the declaration of

13 Omni's handwriting expert, who has concluded the signature on the application

14 more likely than not belongs to Plaintiff, creates a genuine issue of material fact

15 that precludes the entry of summary judgment.

16      As to Omni's primary assumption of the risk defense, traversing the

17 topographical features of a golf course, including the golf cart path, the terrain

18 adjacent to the path, and bridges, is an inherent risk in golf. Plaintiff's sole argument

19 regarding primary assumption of the risk is that he was merely walking at the time

20 of his injury. Contrary to Plaintiff's argument, not only was Plaintiff playing golf

21 when he was injured, but walking from a golf cart parked on the cart path to the tee

22 box is also an inherent part of golf.

23      With regard to Omni's remaining defenses, Plaintiff quibbles with Omni's use

24 of the word "barred" in its comparative negligence defense and takes issue with the

25 absence of further facts to support its third party defense. Plaintiff's contentions are

26 meritless. As to the former, Plaintiff's motion confirms his understanding of the

27 comparative negligence defense and the manner in which the defense applies.

28 Regarding the latter, Omni needs additional time to complete discovery, which

includes the upcoming deposition on July 22, 2020, of the "person most knowledgeable" of the designer and builder of the bridge. As further detailed below, the Court therefore should deny Plaintiff's motion in its entirety.

## II.

## BACKGROUND FACTS

### A.   PLAINTIFF'S LA COSTA MEMBERSHIP

Omni owns the Club at La Costa ("Club") in the City of Carlsbad in northern San Diego County. (Green Decl., Ex. B at 2:12-13, No. 2; Green Decl., Ex. C, Ex. 3 at 1; Irwin Decl. ¶ 3.) The Club offers golf, tennis, health, fitness, and social facilities and activities with the La Costa Resort & Spa. (Green Decl., Ex. C, Ex. 3 at 1; Irwin Decl. ¶ 3.) The Club's golf facilities include two championship 18-hole golf courses, the North Course and the South Course, which are respectively known as the Champions and Legends Courses. (Green Decl., Ex. C, at 34:10-16, Ex. 3 at 1; Irwin Decl. ¶ 3.)

In or about late January 2007, Plaintiff applied for and obtained a Signature Membership at the Club, which was accompanied by payment of a $15,000 deposit. (Green Decl., Ex. C, at 15:22-16:7, 16:24-17:5, 22:15-23:1, 25:7-13, 26:3-6, Ex. 2 at 3, Ex. 3 at 9, Ex. 4 at 4; Irwin Decl., Exs. A-E; Irwin Decl. ¶ 6; see also Doc. 13-1 at 2:8 (noting Plaintiff is a "dues paying member … of La Costa"). In or about early August 2007, Plaintiff upgraded his membership, which required payment of an additional $33,500 deposit. (Irwin Decl. ¶ 9, Ex. F.)

Among other privileges, Plaintiff enjoys the use of the Club Facilities, which generally consist of the two golf courses, tennis courts, the health and fitness center, and swimming pools. (Green Decl., Ex. C, Ex. 3 at 1, 4; Irwin Decl. ¶ 10.) Plaintiff is an avid golfer and estimates playing golf at the Club at least two times per week when he is in town. (Green Decl., Ex. C at 14:25-15:10; 33:17-34:8 (estimating Plaintiff played 500 rounds of golf at the Club from 2007 to 2017).) As a member, Plaintiff also testified at his deposition that he enjoys paying no green fees and no

fees for a locker, golf cart, or bag storage. (Green Decl., Ex. C at 18:18-19:1,19:9-20:4, 22:1-7.)

Plaintiff's membership at the Club is governed by various membership documents, which include the Club's Signature Membership Plan ("Membership Plan"), and the Amended and Restated Rules and Regulations ("Rules and Regulations"). (Irwin Decl. ¶ 10; Green Decl., Ex. C, Exs. 3, 5.) As addressed in detail *infra*, the Rules and Regulations contain a release and assumption of risk provision. (Green Decl., Ex. C, Ex. 5 at 29-30, Art. VII.)

## B.   PLAINTIFF'S INJURY ON THE LEGENDS COURSE

Situated on the golf cart path between the sixth hole and the seventh tee box of the Legends Course is an arched concrete bridge that crosses over a culvert. (Irwin Decl. ¶ 11, Ex. G.) Construction of the bridge was completed in early May 2017, after the prior wooden bridge washed out in a storm earlier that year. (Green Decl., Ex. C at 34:24-35:18, Ex. 6; Irwin Decl. ¶ 11.)

On August 29, 2018, Plaintiff was playing golf on the Legends Course with a group of four other golfers. (Green Decl., Ex. C at 41:5-17, 41:25-42:6, 53:20-54:14, Exs. 8-11.) During the game, Plaintiff drove his golf cart on the golf cart path over the bridge located between the sixth hole and the seventh tee box for the 92nd time.[1] (Green Decl., Ex. C at 50:21-51:3, Ex. 11.) Rather than drive across the entire bridge to park his golf cart, Plaintiff parked his cart at the bottom of the downward slope of the bridge. (Green Decl., Ex. C at 77:12-21, Ex. 11 at 2-3.)

Upon exiting his golf cart, Plaintiff walked to the back of the cart to retrieve a golf club. (Green Decl., Ex. C at 61:2-7.) Despite still being on the bridge at that time, Plaintiff walked around the back of the golf cart to head toward the seventh tee

---

[1]    Following the construction of the bridge in early May 2017, Plaintiff played golf on the Legends Course on 91 occasions between May 11, 2017, and August 28, 2018, the day before the incident in question occurred. (Green Decl., Ex. C at 48:23-49:16, Ex. 10.)

box. (Green Decl., Ex. C at 60:21-23, 63:6-10.) Plaintiff then stepped straight over the curb of the golf cart path and into the culvert that traverses under the bridge. (Green Decl., Ex. C at 63:6-19, 65:10-12, 77:12-78:4, 93:23-94:21, 102:20-103:11, Ex. 11 at 3, Ex. 13 at A-9, A-14.)

At his deposition, Plaintiff testified that he was not looking down when he stepped over the curb; rather, his eyes were directed at the tee box. (Green Decl., Ex. C at 64:20-65:1, 103:11-15.) When shown a photograph taken at the time of the incident, Plaintiff also admitted that the area of the culvert in which he stepped was "absolutely" visible. (Green Decl., Ex. C at 111:19-22.) Once Plaintiff's foot landed in the culvert, Plaintiff testified that his foot "got caught between the bridge and the ground …[,]" which resulted in Plaintiff tearing his left Achilles tendon. (Green Decl., Ex. C at 66:2-25, Ex. 11 at 2; Green Decl., Ex. A at 3:25-28.)

### III.

### **LEGAL STANDARD**

"A party may move for summary judgment, identifying each claim or defense – or the part of each claim or defense – on which summary judgment is sought." Fed. R. Civ. P. 56(a). Summary judgment is appropriate where "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

The moving party bears the initial burden of demonstrating the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party satisfies its burden, the nonmoving party cannot rest on the mere allegations or denials of his pleading, but must "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324. Moreover, "[e]ven if the standards of Rule 56 are met, a court has discretion to deny a motion for summary judgment if it believes that 'the better course would be to proceed to a full trial.'" *Firman v. Life Ins. Co. of North America*, 684

F.3d 533, 538 (5th Cir. 2012) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).

## IV.

## ARGUMENT

### A.    PLAINTIFF IS NOT ENTITLED TO JUDGMENT AS A MATTER OF LAW ON OMNI'S CONTRACTUAL ASSUMPTION OF THE RISK DEFENSE

"Express assumption occurs when the plaintiff, in advance, expressly consents ... to relieve the defendant of an obligation of conduct toward him, and to take his chances of injury from a known risk arising from what the defendant is to do or leave undone." *Saenz v. Whitewater Voyages, Inc.*, 226 Cal. App. 3d 758, 764 (1990) (internal citations omitted). "'A valid release precludes liability for risks of injury within the scope of the release.'" *Anderson v. Fitness Int'l, LLC,* 4 Cal. App. 5th 867, 877 (2016) (internal citations omitted).

"While often referred to as a defense, a release of future liability is more appropriately characterized as an express assumption of the risk that negates the defendant's duty of care, an element of the plaintiff's case." *Eriksson v. Nunnink*, 233 Cal. App. 4th 708, 719 (2015); *see also* CACI 451 (jury instruction for contractual assumption of risk defense). "'The result is that the defendant is relieved of legal duty to the plaintiff; and being under no duty, he cannot be charged with negligence.'"[2] *Eriksson*, 233 Cal. App. 4th at 719 (italics and internal quotation marks omitted).

Plaintiff's motion principally attacks Omni's express assumption of the risk defense on the basis that Plaintiff purportedly did not sign his membership

---

[2]      Plaintiff's motion erroneously suggests that Omni's contractual assumption of risk defense equates to secondary assumption of risk. (Doc. 13-1 at 1:9-12.) "'[C]ases involving express assumption of risk are concerned with instances in which, as the result of an express agreement, the defendant owes no duty to protect the plaintiff from an injury-causing risk." *Eriksson*, 233 Cal. App. 4th at 719. The defense is therefore "'analogous to primary assumption of risk.'" *Ibid.*

1   application when he joined the Club in January 2017. (Doc. 13-1 at 4:19-5:10.)
2   According to Plaintiff, the defense is "dependent on a signed, admissible
3   contract[,]" and "Omni [] has no signed contract or witness to support" such
4   defense. (*Id.* at 4:28-5:1, 5:7-8.) Contrary to Plaintiff's unsubstantiated assertions,
5   no signature was required to bind Plaintiff to the release contained in the Rules and
6   Regulations. Moreover, even if a signature was required, which it is not, the
7   declaration of Omni's handwriting expert creates a genuine issue of material fact
8   that precludes the entry of summary judgment.[3]

9           1.   Mere Membership In A Club Binds A Member To The Club's
10               Rules and Regulations, Including A Release Therein.

11          It is well-settled that the relationship between a club and its members, like
12  that between the Club at La Costa and Plaintiff, is contractual in nature, and that
13  the rules, regulations, and bylaws of such clubs establish the terms of such
14  contracts. *Cobb v. Ironwood Country Club*, 233 Cal. App. 4th 960, 965 (2015);
15  *Pollock v. Crestview Country Club Ass'n*, 41 Kan. App. 2d 904, 909 (2009);
16  *Spokoiny v. Washington State Youth Soccer Ass'n*, 128 Wash. App. 794, 801
17  (2005); *Post v. Belmont Country Club, Inc.*, 60 Mass. App. 645, 647 (2004). "The
18  'bylaws, and rules of private organizations create a legally enforceable agreement
19  in the nature of a contract between the organization and the member because of
20  corresponding mutual obligations—by the member to follow the rules of the
21  organization, and by the organization to fairly apply those rules.'" *Pollock*, 41 Kan.
22  App. 2d at 909 (quoting *King v. Grand Chapter of Rhode Island*, 919 A.2d 991,
23  998 (R.I. 2007)). Moreover, "one who becomes a member of an association is

24
_____

25  [3]      Omni also asserts the related defenses of release and waiver to supplement its
26  contractual assumption of the risk defense. (*See* Doc. 12 at 4:8-5:25, 8:1-9:17, 9:18-
27  11:7.) Because all three defenses are based on the same set of facts, (*see ibid.*),
    Omni's arguments regarding express assumption of the risk apply with equal force
28  to the waiver and release defenses.

MEM. OF P. & A. IN OPP'N TO
MOT. FOR SUMM. J.
19-cv-01923-W-KSC

1  deemed to have known and assented to its bylaws and 'cannot be heard to object'

2  to the enforcement of the bylaws." *Spokoiny*, 128 Wash. App. at 801.

3       A member of a club is also bound by any exculpatory language contained in

4  the governing membership documents. In *Post*, a country club was sued for

5  wrongful death by the estate of a club member who died after a golf cart accident.

6  60 Mass. App. at 646. The trial court granted summary judgment in favor of the

7  club based on release and indemnity language in the club's membership agreement,

8  and the estate appealed. *Id.* at 645-46.

9       On appeal, the estate argued that the release and indemnity clause "was

10  contained in a member's handbook among many other rules, regulations, and

11  provisions; that the section was not highlighted, as other sections of the handbook

12  were; and that there was no evidence that [the decedent] had ever read the provision

13  or knew of its existence, either before he became a member of the club, or during

14  the ten years of his membership." *Id.* at 647. The appellate court rejected the

15  estate's arguments.

16       The court first noted the well-settled rule that when "[the decedent] became

17  a member of the club, he entered into an obligation, in the nature of a contract, to

18  be bound by the club's rules and by-laws, and accepted all obligations that were

19  not inconsistent with law." *Ibid.* As to the purported lack of assent, the court

20  "conclude[d] that in becoming a member of the club, [the member] should be

21  charged with knowledge of the Club's by-laws and rules and regulations, and that

22  his actual knowledge of the provision need not be shown in order that the provision

23  apply." *Id.* at 648. The appellate court accordingly affirmed the judgment in favor

24  of the country club. *Id.* at 645, 654; *see also Martin v. Metropolitan Yacht Club,*

25  *Inc.*, 388 Fed. Appx. 6, 7 (1st Cir. 2010) (affirming grant of summary judgment

26  finding yacht club was not liable to damages to members' boats based on

27

28

1   exculpatory clause in club's bylaws).[4]

2         2.   **Plaintiff's Action Is Barred By The Release Contained In The Club's Rules And Regulations.**

3

4         As noted above, Plaintiff's membership at the Club is governed by the Club's

5   Membership Plan and the Rules and Regulations, among other documents. (Irwin

6   Decl. ¶ 10; Green Decl., Ex. C, Exs. 3, 5.) The Membership Plan advises prospective

7   members to carefully review all membership documents. (Green Decl., Ex. C, Ex. 3

8   at 3.) Specifically, the Plan states that "[e]very person who desires to obtain a

9   Signature Membership … should carefully read this Signature Membership Plan and

10  all of the referenced documents and should seek professional advice to evaluate these

11  documents." (*Ibid*.)

12        Referenced throughout the Membership Plan is the Rules and Regulations. (*Id.*

13  at i, ii, 1, 2, 4, 5, 8, 9, 13, 15.) The Introduction of the Membership Plan expressly

14  provides that "[t]he terms of Membership are described in this Signature Plan and in

15  the Rules and Regulations." (*Id.* at 1.) The Membership Plan further states in relevant

16  part:

17        All Signature Membership classes will be subject to this
      Signature Membership Plan and the Rules and Regulations,
18    as amended from time to time by the Club. By applying for
      a Signature Membership, the applicant agrees the Club
19    may amend the Signature Membership Plan and Rules and
      Regulations and that his/her Signature Membership shall
20

21  _____

22  [4]     The court in *Post* also recognized the mutual benefit that an exculpatory
    provision provides to the membership of a club. The court observed, "Given the
23  extent of the membership and the expected use of carts during the golfing season,
    with the possibility that others might be injured and lay claim against the club, the
24  indemnity clause was in fact more likely to have worked in [the decedent's] favor
    than not, shielding him and the other members from increased dues related to
25  payment of claims or additional insurance costs." *Post*, 60 Mass. App. at 649; *see
    also Martin*, 388 Fed. Appx. at 8 ("The limit on liability is one of several terms of a
26  compact of the members with each other to limit the cost of membership, and every
    prospective member who joins immediately shares in its benefits.") (footnote
27  omitted).

28

1
2

be subject to the Signature Membership Plan and Rules and Regulations. (*Id.* at 2.)

3 The Membership Plan also provides that "Signature Membership permits the

4 Signature Member to use the Club Facilities in accordance with the terms of this

5 Signature Membership Plan, such Member's Membership Application and the Rules

6 and Regulations[] …." (*Id.* at 8.) The Plan similarly states that, "[i]f approved for

7 Signature Membership in the Club, the Signature Member agrees to be bound by the

8 terms and conditions of this Signature Membership Plan and the Rules and

9 Regulations of the Club, as amended from time to time[] …." (*Id.* at 13.) The Plan

10 also indicates that "[t]he Signature Member is acquiring a license to use the Club

11 Facilities, subject to compliance with the Rules and Regulations of the Club and the

12 provisions of this Signature Membership Plan." (*Id.* at 15.)

13 At his deposition, Plaintiff testified that he understood that the Club has rules

14 and regulations, including at the time he applied to be a member, and that he

15 understood, as a member of the Club, he was subject to such rules and regulations.

16 (Green Decl., Ex. C at 30:5-15.)

17 The Rules and Regulations, which took effect on March 1, 2006, and to which

18 Plaintiff was subject, contain a release and assumption of risk provision, which states

19 in relevant part:

20
21
22
23

Any Member … who, in any manner, makes use of or accepts the use of any apparatus, appliance, facility, privilege[5] or service whatsoever owned, leased or operated by the Owner, or who engages in any contest, game, function, exercise, competition or other activity operated, organized, arranged or sponsored by the Owner

24

---

25 [5] The Rules and Regulations define "privileges" as "the license to use the Club

26 Facilities, activities and programs given to Members of the Club as set forth in the[] Rules and Regulations and as otherwise provided by the Club." (Green Decl., Ex. C,

27 Ex. 5 at 3, Art. I, § 2, ¶ (bb).) "Club Facilities" include the Golf Courses, i.e., the Champions and Legends Courses. (Green Decl., Ex. C,  Ex. 5 at 1, 2, Art. I, § 2, ¶¶

28 (f), (k).)

MEM. OF P. & A. IN OPP'N TO
MOT. FOR SUMM. J.
19-cv-01923-W-KSC

either on or off the Resort Facilities[6] shall do so at his/her own risk, and shall indemnify, defend and hold harmless the Club, [and] the Owner …, from any and all loss, cost, claim, injury, damage or liability sustained or incurred by him/her, resulting there from and/or resulting from any act or omission of the Club, [and] the Owner, … or arising out of or incident to Membership or use of the Resort Facilities. Additionally the Member shall indemnify and hold harmless the Owner, [and] the Club …, in respect to any such loss, cost, claim or injury, damage or liability sustained or incurred by the Member …. (Green Decl., Ex. C, Ex. 5 at 29-30, Art. VII.)

Plaintiff's action unequivocally falls within the ambit of the foregoing release. At the time of his injury, Plaintiff was making use of a privilege and facility at the Club by playing golf on the Legends Course.[7] Plaintiff also claims an injury that resulted from an alleged action or omission of Omni. Specifically, the Complaint avers that Omni "carelessly and negligently inspected, repaired, maintained, owned, controlled, and marked the premises …[,]" which resulted in Plaintiff tripping and falling on the golf course. (Doc. 1-2, Ex. A at 4, 5 ¶¶ GN-1, Prem.L-1.) Plaintiff's injury also arises out of, and is incident to, both his membership at the Club and his use of the Legends Course. Pursuant to the release in the Rules and Regulations, Plaintiff therefore played golf at his own risk on the date of the incident, and he must indemnify, defend and hold harmless Omni from his resulting injury.

3.   Walking From A Golf Cart To The Tee Box Is An Inherent Part Of Golf.

Plaintiff's argument that the release does not apply because he was injured while walking on the course is unavailing. (Doc. 13-1 at 5:11-6:4, 6:18-7:15.) At the time of his injury, Plaintiff was traveling from his golf cart to the tee box, which is an inherent part of golf. *See Hahn v. Town of Haverstraw, N.Y.*, No. 11 CV

---

[6]   Among other facilities, the "resort facilities" consist of the "Club Facilities," which, as previously noted, include the Golf Courses, i.e., the Champions and Legends Courses. (Green Decl., Ex. C,  Ex. 5 at 1, 2, 3, Art. I, § 2, ¶¶ (f), (k), (bb).)

[7]   Playing golf on the Legends Course also constitutes engaging in a game or other activity operated by Omni within the meaning of the release.

1635(VB), 2013 WL 1680179, at *4 (S.D.N.Y. Apr. 3, 2013), *aff'd* 563 Fed. Appx. 75 (2nd Cir. 2014) (holding that "traveling from the tee to the green as part of [a] round of golf[,]" whether by walking or by golf cart, is an inherent part of golf); *see also Mangan v. Engineer's Country Club, Inc.*, 79 A.D. 3d 706, 706 (N.Y. App. Div. 2010) (recognizing walking down staircase from golf cart path to tee box is an inherent risk in golf); *Barbato v. Hollow Hills Country Club*, 14 A.D. 3d 522, 522 (N.Y. App. Div. 2005) (finding walking on green to be inherent in golf); *Egeth v. County of Westchester*, 2016 A.D. 2d 502 (N.Y. App. Div. 1994) (concluding that "voluntarily traversing" a low mound of earth located between the golf cart path and playing area is an inherent risk in golf).

Plaintiff's argument also inexplicably ignores the language rendering the provision applicable to any member who makes use of any facility or privilege owned or operated by Omni. (Green Decl., Ex. C, Ex. 5 at 29-30, Art. VII.) As noted above, the release is triggered because Plaintiff was using the Legends Course when he was injured, and thus was making use of a facility or privilege owned or operated by Omni.[8]

### 4.   The Release Covers Both Passive And Active Negligence.

Relying on *Burnett v. Chimney Sweep*, 123 Cal. App. 4th 1057 (2004), Plaintiff also argues that the release shields against only "passive negligence," and not "active negligence," because the release at issue does not specifically reference "negligence." (*See* Doc. 13-1 at 6:10-17.) Although ignored by Plaintiff, *Burnett* goes on to state that "the 'active-passive dichotomy' is not 'wholly dispositive' of the issue." *Burnett*, 123 Cal. App. 4th at 1066. Rather, "[w]hether an exculpatory clause 'covers a given case turns primarily on contractual interpretation, and it is the intent of the parties as expressed in the agreement that should control.'" *Ibid.*

---

[8]   The release is also triggered by the language quoted in Plaintiff's motion. (*See* Doc. 13-1 at 5:15-18, 6:18-25.) As noted above, by playing golf at the time of his injury, Plaintiff was engaging in a game or other activity operated by Omni.

MEM. OF P. & A. IN OPP'N TO
MOT. FOR SUMM. J.
19-cv-01923-W-KSC

1   Unlike *Burnett*, which involved an exculpatory clause in a lease, *id.* at 1062,

2   in the context of exculpatory agreements in recreational sports, such as the instant

3   action, California courts have recognized that, "'[i]f a release of ***all*** liability is given,

4   the release applies to any negligence of the defendant.'" *Eriksson*, 233 Cal. App. 4th

5   at 722 (emphasis added and citing *Cohen v. Five Brooks Stable*, 159 Cal. App. 4th

6   1476, 1485 (2008)); *Benedek v. PLC Santa Monica*, 104 Cal. App. 4th 1351, 1357-

7   58 (2002)). The only requirement is "'that the act of negligence, which results in

8   injury to the releaser, be reasonably related to the object or purpose for which the

9   release is given.'" *Eriksson*, 233 Cal. App. 4th at 722. "'An act of negligence is

10  reasonably related to the object or purpose for which the release was given if it is

11  included within the express scope of the release.'" *Ibid.*

12  For example, in *Sanchez v. Bally's Total Fitness Corp.*, 68 Cal. App. 4th 62

13  (1998), the plaintiff's membership application to a health club included an agreement

14  "that all exercises and use of the fitness centers are undertaken by the member at the

15  sole risk of the member, and that the fitness center shall not be liable for any claims

16  for injuries or damages whatsoever to person or property of the member … arising

17  out of or connected with the use of the fitness center." 68 Cal. App. 4th at 64-65.

18  After slipping and falling during an aerobics class, the plaintiff argued in a

19  subsequent lawsuit against the gym that the exculpatory provision was inadequate

20  due to the absence of the word "negligence." *Id.* at 66-69.

21  In its opinion affirming the grant of summary judgment in favor of the gym,

22  the California Court of Appeal recognized that "an analysis based on the 'active-

23  passive dichotomy' or on the absence or presence of a specific reference to

24  'negligence' is not dispositive." *Id.* at 66; *see also Hass v. RhodyCo Productions*, 26

25  Cal. App. 5th 11, 26 (2018); *Cohen*, 159 Cal. App. 4th at 1485. Indeed, that "the term

26  'negligence' or the specific incident of active or passive negligence [] appear in the

27  provision[] … is not the law." *Sanchez*, 68 Cal. App. 4th at 68. It is instead the

28  language in the release that governs. *Id.* at 66-67.

Given it was "not remarkable that a health club would recognize that providing a facility in which members would engage in physical exercise and use exercise equipment involves a risk of injuries to its members[,]" the court found the gym "rationally required a release and assumption of risk as a condition of membership." *Id.* at 67. The court accordingly held the action barred by the release contained in the plaintiff's membership application.[9] *Id.* at 69; *see also Eriksson*, 233 Cal. App. 4th at 722 (concluding that agreement to hold a horse trainer "completely harmless and not liable and release [her] from all liability whatsoever" "plainly encompasses liability for future negligence as well as any previously committed torts").[10]

Similar to *Sanchez*, in light of the risk of injuries associated with the various activities at the Club, including golf, the release and assumption of risk language was a rational condition of Plaintiff's membership. Moreover, the plain language of the Rules and Regulations makes it clear that Plaintiff's use of the golf course at the Club was at his own risk, and that he is obligated to "indemnify, defend and hold harmless" the Club and Omni "from ***any and all loss, cost, claim, injury, damage or liability*** sustained or incurred by him/her, resulting there from and/or resulting from any act

---

[9]     Omni anticipates Plaintiff will argue *Sanchez* is inapposite because the plaintiff therein signed a membership application. As discussed *infra*, however, not only has Plaintiff admitted in this action that he is subject to the Club's Rules and Regulations, (Green Decl., Ex. C at 30:5-15), but his mere membership in the Club, and enjoyment of the benefits thereof, binds him thereto. *Post*, 60 Mass. App. at 647-48.

[10]    The only type of negligence not covered by the release is gross negligence, which the California Supreme Court had held would violate public policy. *Eriksson*, 233 Cal. App. 4th at 723 (citing *City of Santa Barbara v. Superior Court*, 41 Cal. 4th 747, 751 (2007)). In contrast to ordinary negligence, which "consists of a failure to exercise the degree of care in a given situation that a reasonable person under similar circumstances would employ to protect others from harm[,]" gross negligence is defined "as either a 'want of even scant care' or 'an extreme departure from the ordinary standard of conduct.'" *Santa Barbara*, 41 Cal. 4th at 753-54. The bar against releasing gross negligence is of no import, however, given Plaintiff does not and cannot allege gross negligence against Omni.

or omission of [Omni], ... or arising out of or incident to ... use of the Resort Facilities." (Green Decl., Ex. C, Ex. 5 at 29-30, Art. VII [emphasis added].) The breadth of the foregoing release therefore unequivocally encompasses all types of ordinary negligence, whether passive or active.

Even assuming *arguendo* that the release extends only to passive negligence, which is not the case, Plaintiff alleges only passive negligence against Omni. Whereas active negligence involves "an affirmative act," knowledge of or acquiescence in negligent conduct, or failure to perform specific duties, passive negligence involves "mere nonfeasance, such as the failure to discover a dangerous condition or to perform a duty imposed by law." *Rossmoor Sanitation, Inc. v. Pylon, Inc.*, 13 Cal. 3d 622, 629 (1975).

As noted above, the Complaint alleges that Omni "carelessly and negligently inspected, repaired, maintained, owned, controlled, and marked the premises ...." (Doc. 1-2, Ex. A at 4, 5 ¶¶ GN-1, Prem.L-1.) In his discovery responses, the only negligence identified by Plaintiff was the failure to maintain the golf cart path and adjacent area in "a reasonably safe condition[,]" specifically the failure to provide "a warning [or blockade] of the dirt hole[,]" or "mak[e] the grassy area reasonably level adjacent to the golf cart curb ..." (Green Decl., Ex. A at 4:7-14.) Such conduct amounts to only passive negligence. Thus, even accepting Plaintiff's premise that the release only extends to passive negligence, Plaintiff's action is still foreclosed by the release.[11]

/ / /

---

[11]   While Plaintiff's motion asserts that Omni was actively negligent because "it dug a long trench next to the cart path[,]" (Doc. 13-1 at 6:17), such assertion is unsupported by any evidence and is thus insufficient to satisfy Plaintiff's burden on summary judgment.

1
2

        **5.**    <u>No Signature On Plaintiff's Membership Application Was Necessary To Bind Plaintiff To The Release In The Club's Rules and Regulations.</u>

3

Plaintiff's attack on the express assumption of the risk defense is predicated

4

on the false premise that the release in the Rules and Regulations is not enforceable

5

because he did not sign his membership application. The application notes that it,

6

along with the Membership Plan and the Rules and Regulations, "represents the

7

entire understanding between the parties …[,]" which is followed by a signature

8

block for the applicant, as well as a place for the applicant to initial that he received

9

and understands the Membership Plan and the Rules and Regulations. (Green Decl.,

10

Ex. C, Ex. 4 at 4.) That Plaintiff now asserts he did not sign the membership

11

application is inconsequential.

12

As detailed above, Plaintiff's mere membership in the Club created a

13

contractual relationship between Plaintiff and the Club, and Plaintiff is thus bound

14

by the Club's Rules and Regulations as a matter of law. *Cobb*, 233 Cal. App. 4th

15

at 965; *Pollock*, 41 Kan. App. 2d at 909; *Spokoiny*, 128 Wash. App. at 801; *Post*,

16

60 Mass. App. at 647. Moreover, the statement in the membership application that

17

it, the Membership Plan, and the Rules and Regulations constitute the terms of the

18

contractual relationship between Plaintiff and the Club does nothing more than

19

reiterate the legal principles reflected in *Cobb*, *Pollock*, *Spokoiny*, and *Post*.

20

These same principles also do not require that Plaintiff receive and

21

understand the Membership Plan, or the Rules and Regulations. Regardless of

22

whether Plaintiff ever read the Rules and Regulations, even knew of the existence

23

of the release therein, or specifically agreed to the release through a signature or

24

otherwise, Plaintiff is deemed to have assented to such rules and is charged with

25

knowledge of the same. *Spokoiny*, 128 Wash. App. at 801; *Post*, 60 Mass. App. at

26

648.

27

Furthermore, Plaintiff's testimony in this action confirms that he understood

28

the foregoing principles. As previously noted, Plaintiff testified that he understood

that the Club has rules and regulations, and that, as a member of the Club, he was subject to the such rules and regulations. (Green Decl., Ex. C at 30:5-15.) The governing membership documents, including the Rules and Regulations, were also available at any time upon Plaintiff's request. (Irwin Decl. ¶ 10.) Plaintiff instead elected not to request such documents because of his familiarity with rules and regulations for other golf courses. (Green Decl., Ex. C at 31:8-15.)

Notwithstanding the fact that Plaintiff's membership in the Club, by itself, binds him to the Rules and Regulations as a matter of law, California contract law also does not require a contract to be executed in order to be enforceable. California courts have explained as follows:

> A "voluntary acceptance of the benefit of a transaction is equivalent to a consent to all the obligations arising from it, so far as the facts are known, or ought to be known, to the person accepting." (Civ. Code, § 1589, see also Civ. Code, § 1584 ["acceptance of the consideration offered with a proposal, is an acceptance of the proposal"]; *Grant v. Long* (1939) 33 Cal.App.2d 725, 736 ["[w]hile an express contract is one, the terms of which are stated in words ... , one party may use the words and the other may accept, either in words or by his actions or conduct" (citation omitted)].) *Vita Planning and Landscape Architecture, Inc. v. HKS Architects, Inc.*, 240 Cal. App. 4th 763, 773 (2015) (emphasis omitted).

There is no dispute that Plaintiff has been a member of the Club since 2007, and that he has enjoyed the benefits of his membership since then. Plaintiff plays golf at the Club at least two times per week and enjoys paying no green fees and no fees for a locker, golf cart, or bag storage. (Green Decl., Ex. C at 14:25-15:10, 18:18-19:1,19:9-20:4, 22:1-7, 33:17-34:8.) Plaintiff, however, must also bear the burdens and obligations of his membership. This includes the release contained in the Rules and Regulations, which agreement Plaintiff has acknowledged he is subject to. Accordingly, the purported absence of Plaintiff's signature on the membership application is of no moment.[12]

---

[12]     In an effort to further sow confusion, Plaintiff also claims the membership

6.    <u>There Is A Genuine Issue Of Material Fact Regarding Whether Plaintiff Signed The Membership Application.</u>

Even if a signature was required, which it is not, Omni has submitted the declaration of Linda Mitchell, a Certified Forensic Document Examiner and expert in handwriting identification. (Mitchell Decl. ¶¶ 2-3.) In her expert opinion, "it is more likely than not that [Plaintiff] signed the [membership application]." (*Id.* ¶ 8.) Indeed, at his deposition, while Plaintiff stated the signature did not look like his, he ultimately testified that he was not sure if it was his signature or not. (Green Decl., Ex. C at 148:23-149:25.) Because there is a genuine issue of material fact as to whether Plaintiff signed the membership application, Plaintiff's motion for summary judgment should be denied.[13]

**B.    PLAINTIFF IS NOT ENTITLED TO JUDGMENT AS A MATTER OF LAW ON OMNI'S PRIMARY ASSUMPTION OF THE RISK DEFENSE**

Aside from express assumption of risk, "there are two types of assumption of risk: primary and secondary." *Shin v. Ahn*, 42 Cal. 4th 482, 489 (2007) (citing *Knight v. Jewett*, 3 Cal. 4th 296, 308-09 (1992)). The California Supreme Court has described primary assumption of the risk as follows:

> Under the primary assumption of risk doctrine, the defendant owes *no duty* to protect a plaintiff from particular harms arising from ordinary, or simple negligence. [Citation.] In a sports context, the doctrine bars liability because the plaintiff is said to have assumed the particular risks inherent in a sport by choosing to participate. [Citation.] Thus, "a court need not ask what

---

application in the Club's files includes the wrong member number, specifically 017088 instead of 071000. (Doc. 13-1 at 2:15-22, 4:24-26.) The former, however, was Plaintiff's member number when he first obtained his membership in January 2017, but the number was changed to 071000 when Plaintiff upgraded his membership roughly six months later. (Irwin Decl. ¶ 9, Ex. F.)

[13]    Plaintiff's motion seems to fault Omni for not listing in its initial disclosures any "witness to testify that [Plaintiff] signed a contract." (Doc. 13-1 at 5:1-6.) Ms. Mitchell, however, is an expert witness. The disclosure of her identity is therefore governed by Federal Rule of Civil Procedure 26(a)(2), not Rule 26(a)(1).

risks a particular plaintiff subjectively knew of and chose to encounter, but instead must evaluate the fundamental nature of the sport and the defendant's role in or relationship to that sport in order to determine whether the defendant owes a duty to protect a plaintiff from the particular risk of harm. [Citation]."[14] *Shin*, 42 Cal. 4th at 489 (emphasis in original).

The California Supreme Court has held that primary assumption of risk applies to the sport of golf. *Id.* at 497 (holding that being struck by a carelessly hit golf ball is an inherent risk of golf). While the bulk of California case law concerning golf course injuries involves golfers being hit by errant golf balls, numerous courts outside California have applied primary assumption of risk to reject negligence and premises liability claims in circumstances similar to the instant action.

For example, in *Egeth*, a golfer brought a negligence action against a golf course for injuries she sustained from walking over a low mound of earth located between the golf cart path and the playing area of the course. 2016 A.D. 2d at 502. In affirming the trial court's grant of summary judgment in favor of the golf course, the New York appellate court agreed with the trial court's "conclusion that that the plaintiff, by voluntarily traversing this topographical feature of the golf course, assumed the risk of injury therefrom and is precluded from recovery." *Ibid.* (citations omitted). The court further found "that the terrain around the green was inherent to the nature of the golf course and that, under the circumstances, the plaintiff was not unnecessarily or unreasonably exposed to danger."[15] *Ibid.* (citations omitted).

---

[14]     In contrast to primary assumption of risk, "the secondary assumption of risk doctrine relates to the allocation of damages, not to the question of duty." *Shin*, 42 Cal. 4th at 498. "Once it has been established that a duty has been breached, … the general principles of comparative fault are applied to assign *liability* in proportion to the parties' respective fault. Thus, *primary* assumption of risk applies to the question of duty and *secondary* assumption of risk applies to the calculation of damages." *Id.* at 498-99 (emphasis in original).

[15]     The court in *Egeth* also noted that the plaintiff "was aware of the mound of earth having traversed it on a prior occasion[.]" 2016 A.D. 2d at 502. Although California and New York both employ "a no-duty rule when analyzing sports injury claims" based on the primary assumption of risk doctrine, *see Pfenning v. Lineman*,

In *Parsons v. Arrowhead Golf, Inc.*, 874 N.E.2d 993 (Ind. Ct. App. 2007),[16] the plaintiff parked his golf cart on the cart path, exited the cart and retrieved his golf club. 874 N.E.2d at 994. The plaintiff then turned from the cart and stepped off the cart path onto the green, which required him to "step down because of a drop [between four and twelve inches deep] from the asphalt path to the ground." *Ibid.* The plaintiff landed straight-legged and suffered a back injury. *Ibid.* The trial court granted summary judgment in the golf course's favor, finding that "[plaintiff] was a voluntary participant in the sporting activity of golf and thereby assumed the risk of injuries as a result of all reasonably foreseeable parts of the game, including traversing the grounds of the golf course." *Ibid.*

The Indiana appellate court affirmed, concluding as a matter of law that the golf course owed no duty to prevent the type of injury that the plaintiff sustained. *Id.* at 998. In addition to adopting the trial court's rationale, *id.* at 997-98, the appellate court observed that "traversing the topographical features of a golf course is an inherent part of the game of golf[,]" and that "[g]olf is played outside and requires that players walk over grass and other natural conditions of the land on which the course is located." *Id.* at 999.

In *Simon v. Hamlet Windwatch Dev., LLC*, 120 A.D. 3d 657 (N.Y. App. Div. 2014), after exiting his golf cart, and while walking to the rear of the cart to retrieve his club, the plaintiff "stepped into an area of the cart path containing a depressed drainage grate[,]" which caused him to fall forward and sustain an injury. 120 A.D.

---

947 N.E. 2d 392, 401 (Ind. 2011), a plaintiff's subjective knowledge of a risk is not considered under California's primary assumption of risk doctrine. *Knight*, 3 Cal. 4th at 316. Thus, while Plaintiff had traversed the bridge between the sixth hole and seventh tee nearly 100 times before the incident, Omni recognizes this fact is not considered under its primary assumption of the risk defense.

[16]   *Parsons* was decided before the Supreme Court of Indiana eliminated the no-duty approach to assumption of the risk in Indiana. *Pfenning*, 947 N.E. 2d at 404 n.3. Given California employs the no-duty rule, however, *Parsons* is instructive.

3d at 657. The trial court granted summary judgment in favor of the golf course, reasoning that "tripp[ing] on a depression associated with a drainage grate in a cart path is the kind of condition and circumstance to which the doctrine of assumption of risk applies[,]" which the New York appellate court affirmed based on the doctrine of primary assumption of risk. *Simon v. Hamlet Windwatch Dev., LLC*, No. 360672010, 2013 WL 10154235, at *1-2 (N.Y. Super. Feb. 14, 2013); *Simon*, 120 A.D. 3d at 657.

In *Bryant v. Town of Brookhaven*, 135 A.D. 3d 801 (N.Y. App. Div. 2016), a golfer brought suit against a golf course after he slipped and fell on a wet wooden railroad tie that lined a footpath on a golf course. 135 A.D. 3d at 802. While the trial court denied the golf course's motion for summary judgment, the New York appellate court reversed and directed that the motion be granted based on the doctrine of primary assumption of the risk. *Ibid.*

The court noted that the risks inherent in a sport, like golf, include "the risks involved in the construction of the field, and any open and obvious conditions of the place where the sport is played." *Ibid.* (citations omitted). The court accordingly held "that slipping on the wet railroad tie was a reasonably foreseeable consequence of playing golf while the course was still wet from the morning dew[,]" and that "the injured plaintiff … assumed the risk of injury." *Id.* at 803. The court also rejected the plaintiff's argument that "overgrown grass camouflaged or hid the slippery condition of the railroad tie from view" because the plaintiff had testified "that, as he was approaching the footpath, he was looking '[a]head,' was not walking with his head down, but walking 'straight ahead,' and saw the footpath in front of him." *Ibid.*

In *Bockelmann v. New Paltz Golf Course*, 284 A.D. 2d 783 (N.Y. App. Div. 2001), the plaintiff golfer slipped and fell while crossing a wooden bridge at the defendant's golf course. 284 A.D. 2d at 783. The trial court denied the golf course's motion for summary judgment, but the New York appellate court reversed based on the assumption of risk doctrine. *Ibid.* In directing the trial court to grant the motion,

the appellate court held that "the bridge, which provided golfers with a means of traversing a drainage ditch by cart or foot," is "an integral part of the golf course." *Id.* at 783-84.

As reflected in *Egeth*, *Parsons*, *Simon*, *Bryant*, and *Bockelman*, traversing the topographical features of a golf course is an inherent risk in golf. Such features include the golf cart path, the terrain adjacent to the path, and bridges. As part of playing golf, golfers are required to walk from golf cart paths to grass and across the "grass and other natural conditions of the land on which the course is located." *Parsons*, 874 N.E.2d at 999. On those courses with culverts and drainage channels, such as the Legends Course, golfers also must cross bridges when playing golf. *Bockelman*, 284 A.D. 2d at 783-84. Indeed, the risks inherent in golf include all of those associated with the construction of the course. *Bryant*, 135 A.D. 3d at 802.

Plaintiff's sole argument regarding primary assumption of the risk is that the defense does not apply to mere walking. (Doc. 13-1 at 7:25-28.) Not only does this argument ignore the fact that Plaintiff was golfing when he was injured, but, as noted above, walking from a golf cart parked on the cart path to the tee box is an inherent part of golf. *Hahn*, 2013 WL 1680179 at *4; *Mangan*, 79 A.D. 3d at 706; *Barbato*, 14 A.D. 3d at 522; *Egeth*, 2016 A.D. 2d at 502.

Although not argued in Plaintiff's moving papers, and therefore precluded from doing so on reply, any purported claim that the portion of the culvert in which Plaintiff stepped was somehow hidden from view due to overgrown grass is also insufficient to defeat primary assumption of the risk. Similar to *Bryant*, Plaintiff testified at his deposition that he was looking straight ahead at the tee box, instead of looking down, when he stepped over the curb of the golf cart path and into the culvert. (Green Decl., Ex. C at 64:20-65:1, 103:11-15); *Bryant*, 135 A.D. 3d at 802. Given Plaintiff was not looking down at the grass when he stepped over the curb, the length of the grass is therefore immaterial. Moreover, when looking at a photograph taken at the time of the incident, Plaintiff admitted at his deposition that the area of the

1   culvert in which he stepped was "absolutely" visible. (Green Decl., Ex. C at 111:19-
2   22.) Accordingly, Plaintiff's slip and fall injury while stepping over the curb of the
3   golf cart path on his way to the tee box is foreclosed by primary assumption of the
4   risk.

5   **C.   PLAINTIFF IS NOT ENTITLED TO JUDGMENT AS A MATTER OF LAW ON OMNI'S COMPARATIVE NEGLIGENCE DEFENSE**
6

7       As its third affirmative defense, Omni alleges that the Complaint is "barred"
8   due to Plaintiff's comparative negligence. (Doc. 12 at 6:18-7:19.) As indicated in
9   Plaintiff's motion, in *Li v. Yellow Cab Co.*, 13 Cal. 3d 804 (1975), the California
10  Supreme Court replaced the former rule that contributory negligence was a
11  complete bar to recovery with the comparative negligence approach, "under which
12  liability for damage will be borne by those whose negligence caused it in direct
13  proportion to their respective fault." 13 Cal. 3d at 813. Based on *Li*, Plaintiff's
14  motion nitpicks Omni's use of the word "barred" on the ground that comparative
15  negligence is not a complete bar and contends that the defense should be
16  "dismissed or corrected." (Doc. 13-1 at 8:3-8.)

17      Not only does the First Amended Answer place Plaintiff on ample notice of
18  Omni's comparative negligence defense, which includes a detailed recitation of
19  facts supporting the same, (Doc. 12 at 6:20-7:19), but Plaintiff's motion also
20  confirms Plaintiff's understanding of the contours of the defense. Moreover, the
21  intent of the defense and the use of the word "barred" is to allege that Plaintiff's
22  action is precluded to the extent he was himself negligent.

23      Among other facts, Plaintiff parked and exited his golf cart on the downslope
24  ramp of the bridge on the golf cart path, (Green Decl., Ex. C at 77:12-21, Ex. 11 at
25  3); Plaintiff was looking straight ahead at the tee box, instead of looking down, when
26  he stepped over the curb from the cart path on his way to the tee box, (Green Decl.,
27  Ex. C at 64:20-65:1, 103:11-15); Plaintiff testified that the culvert was "absolutely"
28  visible on the date of the incident, (Green Decl., Ex. C at 111:19-22); and Plaintiff

had played golf on the Legends Course, and had thus traversed and observed the bridge and culvert below, nearly 100 times before the incident. (Green Decl., Ex. C at 48:23-49:16, Ex. 10.) Dismissal of Omni's comparative negligence defense is therefore inappropriate.[17]

### D. PLAINTIFF IS NOT ENTITLED TO JUDGMENT AS A MATTER OF LAW ON OMNI'S THIRD PARTY DEFENSE

Plaintiff's motion also takes issue with Omni's affirmative defense that it is not responsible for the conduct of third parties, such as Hoagland and Sons Concrete ("Hoagland"), who designed and constructed the bridge on the cart path between the sixth hole and seventh tee box. (Docs. 12 at 7:20-28, 13-1 at 8:9-23.) Specifically, Plaintiff faults Omni for not alleging more facts to support the defense and for not filing a third party complaint against Hoagland. (Doc. 13-1 at 8:9-23.) Neither ground supports summary judgment in favor of Plaintiff on this defense.

Under Federal Rule of Civil Procedure 56(d), the Court may defer or deny the motion in order to allow Omni time to take discovery. The deposition of the "person most knowledgeable" at Hoagland regarding the design and construction of the bridge, among other topics, has been noticed for July 22, 2020. (Green Decl. ¶ 9, Ex. D.) In order to allow Omni the opportunity to obtain facts that may or may not support Omni's third party defense, the Court should either defer or deny Plaintiff's motion as to this defense. (*See* Green Decl. ¶¶ 6-9.)

Moreover, even if the deposition of Hoagland results in evidence to support Omni's third party defense, the filing of a third party complaint against Hoagland is not mandatory. Fed. R. Civ. P. 14(a)(1); *Fernandez v. Corporacion Insular De Seguros*, 79 F.3d 207, 210 (1st Cir. 1996). Finally, an action for equitable indemnity against a third party tortfeasor does not accrue, for purposes of the

---

[17]     In the event the Court agrees with Plaintiff that the use of the word "barred" renders Omni's comparative negligence defense unclear in some manner, then, as suggested by Plaintiff, Omni should be given leave to amend to clarify the defense.

1  statute of limitations, until the indemnitee pays a judgment or settlement that

2  entitles it to indemnity. *Valley Circle Estates v. VTN Consolidated, Inc.*, 33 Cal.

3  3d 604, 608-15 (1983). Dismissal of Omni's third party defense is therefore

4  improper at this time.

5  **V.**

6  **<u>CONCLUSION</u>**

7    For the reasons set forth above, the Court should deny Plaintiff's motion for

8  summary judgment.

9

10  Dated: July 6, 2020      BEST BEST & KRIEGER LLP

11

12             By: /s/  Matthew L. Green
            ROBERT J. HANNA

13              MATTHEW L. GREEN
            WHITNEY R. BLACKHURST

14              Attorneys for Defendant
            OMNI HOTELS MANAGEMENT

15              CORPORATION

16

17

18

19

20

21

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

LAW OFFICES OF
BEST BEST & KRIEGER LLP
655 WEST BROADWAY, 15TH FLOOR
SAN DIEGO, CA 92101

<u>Allen Harvey Abolafia v. Omni Hotels Management Corp.</u>
United States District Court, So. District of CA, Case No. 19-cv-01923-W-KSC

### <u>PROOF OF SERVICE</u>

I, Lisa Atwood, declare:

I am a citizen of the United States and employed in San Diego County, California. I am over the age of eighteen years and not a party to the within-entitled action. My business address is 655 West Broadway, 15th Floor, San Diego, California 92101. On July 6, 2020, I served a copy of the within document(s):

DEFENDANT OMNI HOTELS MANAGEMENT CORPORATION'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF ALLEN HARVEY ABOLAFIA'S MOTION FOR SUMMARY JUDGMENT;

DECLARATION OF MATTHEW L. GREEN IN OPPOSITION TO PLAINTIFF ALLEN HARVEY ABOLAFIA'S MOTION FOR SUMMARY JUDGMENT;

DECLARATION OF DUSTIN IRWIN IN OPPOSITION TO PLAINTIFF ALLEN HARVEY ABOLAFIA'S MOTION FOR SUMMARY JUDGMENT;

DECLARATION OF LINDA MITCHELL IN OPPOSITION TO PLAINTIFF ALLEN HARVEY ABOLAFIA'S MOTION FOR SUMMARY JUDGMENT;

REQUEST FOR JUDICIAL NOTICE IN OPPOSITION TO PLAINTIFF ALLEN HARVEY ABOLAFIA'S MOTION FOR SUMMARY JUDGMENT;

☒ **By Electronic Service**. Pursuant to CM/ECF System, registration as a CM/ECF user constitutes consent to electronic service through the Court's transmission facilities. The Court's CM/ECF system sends an e-mail notification of the filing to the parties and counsel of record who are registered with the Court's EC/ECF system.

Robert J. Pecora, Esq.
Law Office of Robert J. Pecora
7855 Ivanhoe Avenue, Suite 408
La Jolla, California 92037

ATTORNEYS FOR PLAINTIFF
ALLEN HARVEY ABOLAFIA

Tel: (858) 454-4014
Email: robertjpecora@aol.com

- 1 -

USDC, SOUTHERN DIST.
CASE NO. 18CV1836 DMS (LL)

61746.00003\32533381.1

1

2          I declare that I am employed in the office of a member of the bar of this court

3   at whose direction the service was made.

4          Executed on July 6, 2020, at San Diego, California.

5                                                    /s/ Lisa Atwood

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LAW OFFICES OF
BEST BEST & KRIEGER LLP
655 WEST BROADWAY, 15TH FLOOR
SAN DIEGO, CA 92101

- 2 -

USDC, SOUTHERN DIST.
CASE NO. 18CV1836 DMS (LL)

61746.00003\32533381.1