1   MATTHEW L. GREEN, Bar No. 227904
    matthew.green@bbklaw.com
2   WHITNEY R. BLACKHURST, Bar No. 295239
    whitney.blackhurst@bbklaw.com
3   BEST BEST & KRIEGER LLP
    655 West Broadway, 15th Floor
4   San Diego, California 92101
    Telephone:  (619) 525-1300
5   Facsimile:  (619) 233-6118

6   Attorneys for Defendant
    OMNI HOTELS MANAGEMENT
7   CORPORATION

8

9                    UNITED STATES DISTRICT COURT

10                 SOUTHERN DISTRICT OF CALIFORNIA

11

12   ALLEN HARVEY ABOLAFIA,              Case No.  19-cv-01923-W-KSC
                                         Judge: Hon. Thomas J. Whelan
13            Plaintiff,
                                         DEFENDANT OMNI HOTELS
14       v.                              MANAGEMENT CORPORATION'S
                                         MEMORANDUM OF POINTS AND
15   OMNI HOTELS MANAGEMENT              AUTHORITIES IN SUPPORT OF
     CORPORATION; and DOES 1 TO          MOTION FOR SUMMARY
16   20, inclusive,                      JUDGMENT

17            Defendants.                Date:    March 1, 2021
                                         Dept.:   Courtroom 3C (3rd Floor)
18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ........................................................................................ 6

II. BACKGROUND FACTS ......................................................................... 7

    A.    PLAINTIFF'S LA COSTA MEMBERSHIP ...................................... 7

    B.    PLAINTIFF'S INJURY ON THE LEGENDS COURSE ................... 8

III. LEGAL STANDARD ............................................................................. 9

IV. ARGUMENT ........................................................................................ 10

    A.    OMNI IS ENTITLED TO JUDGMENT AS A MATTER OF
            LAW ON ITS PRIMARY ASSUMPTION OF THE RISK
            DEFENSE ....................................................................................... 10

    B.    OMNI IS ALSO ENTITLED TO JUDGMENT AS A MATTER
            OF LAW ON ITS CONTRACTUAL ASSUMPTION OF THE
            RISK DEFENSE ............................................................................ 15

            1.    MEMBERSHIP IN A CLUB BINDS A MEMBER TO
                    THE CLUB'S RULES AND REGULATIONS,
                    INCLUDING A RELEASE THEREIN. .................................. 15

            2.    PLAINTIFF'S ACTION IS BARRED BY THE
                    RELEASE IN THE CLUB'S RULES AND
                    REGULATIONS. ................................................................. 17

            3.    NO SIGNATURE ON PLAINTIFF'S MEMBERSHIP
                    APPLICATION WAS NECESSARY TO BIND
                    PLAINTIFF TO THE RELEASE IN THE CLUB'S
                    RULES AND REGULATIONS. ........................................... 20

            4.    PLAINTIFF'S ACTION IS ALSO BARRED BY THE
                    RELEASE IN THE CLUB'S BYLAWS. ............................... 22

    C.    PLAINTIFF'S ACTION ALSO FAILS AS A MATTER OF
            LAW INSOFAR AS IT ALLEGES OMNI HAD A DUTY TO
            WARN PLAINTIFF ABOUT THE CULVERT BECAUSE
            THE CULVERT IS OPEN AND OBVIOUS .................................... 23

V. CONCLUSION ...................................................................................... 24

1
2

**Federal Cases**

3

*Anderson v. Liberty Lobby, Inc.*
    477 U.S. 242 (1986) ................................................................ 10

4

5

*Celotex Corp. v. Catrett*
    477 U.S. 317 (1986) ............................................................ 9, 10

6

7

*Firman v. Life Ins. Co. of North America*
    684 F.3d 533 (5th Cir. 2012) ................................................ 10

8

9

*Hahn v. Town of Haverstraw, N.Y.*
    No. 11 CV 1635(VB), 2013 WL 1680179 (S.D.N.Y. Apr. 3, 2013) ................ 14

10

11

*Martin v. Metropolitan Yacht Club, Inc.*
    388 Fed. Appx. 6 (1st Cir. 2010) .......................................... 17

12

**State Cases**

13

*Anderson v. Fitness Int'l, LLC*
    4 Cal. App. 5th 867 (2016) ................................................ 15

14

15

*Barbato v. Hollow Hills Country Club*
    14 A.D. 3d 522 (N.Y. App. Div. 2005) ...................................... 14

16

17

*Bockelmann v. New Paltz Golf Course*
    284 A.D. 2d 783 (N.Y. App. Div. 2001) ................................ 13, 14

18

19

*Bryant v. Town of Brookhaven*
    135 A.D. 3d 801 (N.Y. App. Div. 2016) ............................ 12, 13, 14

20

21

*Cobb v. Ironwood Country Club*
    233 Cal. App. 4th 960 (2015) .......................................... 15, 20

22

23

*Egeth v. County of Westchester*
    206 A.D. 2d 502 (N.Y. App. Div. 1994) ............................ 11, 13, 14

24

25

*Eriksson v. Nunnink*
    233 Cal. App. 4th 708 (2015) .............................................. 15

26

27

*Grant v. Long* (1939)
    33 Cal. App. 2d 725 ...................................................... 21

28

*Jacobs v. Coldwell Banker Residential Brokerage Co.*
  14 Cal. App. 5th 438 (Ct. App. 2017) .......................................................... 23, 24

*Kesner v. Superior Court*
  1 Cal. 5th 1132 (Cal. 2016) ....................................................................... 23

*King v. Grand Chapter of Rhode Island*
  919 A.2d 991 (R.I. 2007).......................................................................... 16

*Knight v. Jewett*
  3 Cal. 4th 296 (1992)............................................................................. 10, 11

*Mangan v. Engineer's Country Club, Inc.*
  79 A.D. 3d 706 (N.Y. App. Div. 2010)............................................................. 14

*Parsons v. Arrowhead Golf, Inc.*
  874 N.E. 2d 993 (Ind. Ct. App. 2007)...................................................... 11, 12, 13

*Pfenning v. Lineman*
  947 N.E. 2d 392 (Ind. 2011).................................................................... 11

*Pollock v. Crestview Country Club Ass'n*
  41 Kan. App. 2d 904 (2009).............................................................. 15, 16, 20

*Post v. Belmont Country Club, Inc.*
  60 Mass. App. 645 (2004) .......................................................... 15, 16, 17, 20

*Rowland v. Christian*
  69 Cal. 2d 108 (Cal. 1968) ..................................................................... 23

*Saenz v. Whitewater Voyages, Inc.*
  226 Cal. App. 3d 758 (1990)................................................................... 15

*Shin v. Ahn*
  42 Cal. 4th 482 (2007).......................................................................... 10, 11

*Simon v. Hamlet Windwatch Dev., LLC*
  120 A.D. 3d 657 (N.Y. App. Div. 2014)................................................... 12, 13

*Simon v. Hamlet Windwatch Dev., LLC*
  No. 360672010, 2013 WL 10154235 (N.Y. Sup. Feb. 14, 2013)...................... 12

*Spokoiny v. Washington State Youth Soccer Ass'n*
  128 Wash. App. 794 (2005) ............................................................ 15, 16, 20

*Vita Planning and Landscape Architecture, Inc. v. HKS Architects, Inc.*
   240 Cal. App. 4th 763 (2015) .............................................................. 21

**State Statutes**

Cal. Civ. Code § 1584 ........................................................................... 21

Cal. Civ. Code § 1589 ........................................................................... 21

**Rules**

Fed. R. Civ. P. 56 ............................................................................ 9, 10

Defendant Omni Hotels Management Corporation ("Omni") respectfully submits the following memorandum of points and authorities in support of its motion for summary judgment.

## I.

## <u>INTRODUCTION</u>

This action arises from a slip and fall injury that occurred while Plaintiff Allen Harvey Abolafia ("Plaintiff"), an avid golfer and longtime member of the Club at La Costa, was golfing on the South Course of the Omni La Costa Resort and Spa. In August 2018, Plaintiff drove his golf cart over a concrete bridge located on the golf cart path between the sixth hole and seventh tee box, a bridge that Plaintiff had previously crossed nearly 100 times since it was constructed in May 2017. Rather than cross the entire bridge to park his golf cart, Plaintiff parked the cart near the bottom of the downward slope of the bridge and exited the cart in that location. After retrieving his club from the back of the cart, Plaintiff proceeded to walk toward the seventh hole. Without looking down to see where he was stepping, Plaintiff stepped off the bridge, landed his foot in the culvert, and sustained a torn Achilles tendon.

Instead of accepting any responsibility for his injury, Plaintiff filed suit against Omni in state court in April 2019, alleging claims for negligence and premises liability and seeking $500,000 in damages. (Doc. 1-2, Ex. A at 4-5; Green Decl., Ex. A at 9:2-5.) Omni subsequently removed the action to this Court in October 2019, based on diversity jurisdiction. (Doc. 1 ¶¶ 4-6.)

At issue in Omni's motion are its affirmative defenses of primary assumption of risk and contractual assumption of risk. (Doc. 12.) As to the former, traversing the topographical features of a golf course, including the golf cart path, the terrain adjacent to the path, and bridges, is an inherent risk in golf. Regarding the latter defense, the Club at La Costa's rules and regulations and bylaws both include release and assumption of risk provisions that preclude any liability in this action. As further detailed below, Omni is therefore entitled to judgment as a matter of law with regard

to both affirmative defenses. Notwithstanding Omni's complete assumption of risk defenses, Plaintiff's action also fails insofar as it alleges Omni had a duty to warn Plaintiff about the culvert given the culvert is open and obvious.

## II.

## BACKGROUND FACTS

### A.    PLAINTIFF'S LA COSTA MEMBERSHIP

Omni owns the Club at La Costa ("Club") in the City of Carlsbad in northern San Diego County. (Green Decl., Ex. B at 2:12-13, No. 2; Green Decl., Ex. C, Ex. 3 at 1; Irwin Decl. ¶ 3.) The Club offers golf, tennis, health, fitness, and social facilities and activities with the La Costa Resort & Spa. (Green Decl., Ex. C, Ex. 3 at 1; Irwin Decl. ¶ 3.) The Club's golf facilities include two championship 18-hole golf courses, the North Course and the South Course, which are respectively known as the Champions and Legends Courses. (Green Decl., Ex. C, at 34:10-16, Ex. 3 at 1; Irwin Decl. ¶ 3.)

In or about late January 2007, Plaintiff applied for and obtained a Signature Membership at the Club, which was accompanied by payment of a $15,000 deposit. (Green Decl., Ex. C, at 15:22-16:7, 16:24-17:5, 22:15-23:1, 25:7-13, 26:3-6, Ex. 2 at 3, Ex. 3 at 9, Ex. 4 at 4; Irwin Decl., Exs. A-E; Irwin Decl. ¶ 4; see also Doc. 13-1 at 2:8 (noting Plaintiff is a "dues paying member … of La Costa"). In or about early August 2007, Plaintiff upgraded his membership, which required payment of an additional $33,500 deposit. (Irwin Decl. ¶ 9, Ex. F.)

Among other privileges, Plaintiff enjoys the use of the Club Facilities, which generally consist of the two golf courses, tennis courts, the health and fitness center, and swimming pools. (Green Decl., Ex. C, Ex. 3 at 1, 4; Irwin Decl. ¶ 11.) Plaintiff is an avid golfer and estimates playing golf at the Club at least two times per week when he is in town. (Green Decl., Ex. C at 14:25-15:10; 33:17-34:8 (estimating Plaintiff played 500 rounds of golf at the Club from 2007 to 2017).) As a member, Plaintiff also testified at his deposition that he enjoys paying no green fees and no

1   fees for a locker, golf cart, or bag storage. (Green Decl., Ex. C at 18:18-19:1,19:9-
2   20:4, 22:1-7.)

3       Plaintiff's membership at the Club is governed by various membership
4   documents, which include the Club's Signature Membership Plan dated March 2006
5   ("Membership Plan"), the 2006 Amended and Restated Rules and Regulations
6   ("Rules and Regulations"), and the 2011 Amended and Restated Membership Bylaws
7   ("Bylaws"). (Irwin Decl. ¶ 11; Green Decl., Ex. C, Exs. 3, 5.) As addressed in detail
8   *infra*, both the Rules and Regulations and Bylaws contain release and assumption of
9   risk provisions. (Green Decl., Ex. C, Ex. 5 at 29-30, Art. VII; Irwin Decl., Ex. H at
10  18, 19-20, §§ 8.3, 8.7.)

11      **B.    PLAINTIFF'S INJURY ON THE LEGENDS COURSE**

12      Situated on the golf cart path between the sixth hole and the seventh tee box
13  of the Legends Course is an arched concrete bridge that crosses over a culvert. (Irwin
14  Decl. ¶ 12, Ex. G.) Construction of the bridge was completed in early May 2017,
15  after the prior wooden bridge washed out in a storm earlier that year. (Green Decl.,
16  Ex. C at 34:24-35:18, Ex. 6; Irwin Decl. ¶ 12.)

17      On August 29, 2018, Plaintiff was playing golf on the Legends Course with a
18  group of four other golfers. (Green Decl., Ex. C at 41:5-17, 41:25-42:6, 53:20-54:14,
19  Exs. 8-11.) During the game, Plaintiff drove his golf cart on the golf cart path over
20  the bridge located between the sixth hole and the seventh tee box for the 92nd time.[1]
21  (Green Decl., Ex. C at 50:21-51:3, Ex. 11.) Rather than drive across the entire bridge
22  to park his golf cart, Plaintiff parked his cart at the bottom of the downward slope of
23  the bridge. (Green Decl., Ex. C at 77:12-21, Ex. 11 at 2-3.)
24  / / /

25

26  [1]    Following the construction of the bridge in early May 2017, Plaintiff played
27  golf on the Legends Course on 91 occasions between May 11, 2017, and August 28,
    2018, the day before the incident in question occurred. (Green Decl., Ex. C at 48:23-
28  49:16, Ex. 10.)

Upon exiting his golf cart, Plaintiff walked to the back of the cart to retrieve a golf club. (Green Decl., Ex. C at 61:2-7.) Despite still being on the bridge at that time, Plaintiff walked around the back of the golf cart to head toward the seventh tee box. (Green Decl., Ex. C at 60:21-23, 63:6-10.) Plaintiff then stepped straight over the curb of the golf cart path and into the culvert that traverses under the bridge. (Green Decl., Ex. C at 63:6-19, 65:10-12, 77:12-78:4, 93:23-94:21, 102:20-103:11, Ex. 11 at 3, Ex. 13 at A-9, A-14.)

At his deposition, Plaintiff testified that he was not looking down when he stepped over the curb; rather, his eyes were directed at the tee box. (Green Decl., Ex. C at 64:20-65:1, 103:11-15.) When shown a photograph taken at the time of the incident, Plaintiff also admitted that the area of the culvert in which he stepped was "absolutely" visible. (Green Decl., Ex. C at 111:19-22.) Once Plaintiff's foot landed in the culvert, Plaintiff testified that his foot "got caught between the bridge and the ground …[,]" which resulted in Plaintiff tearing his left Achilles tendon. (Green Decl., Ex. C at 66:2-25, Ex. 11 at 2; Green Decl., Ex. A at 3:25-28.)

### III.

### LEGAL STANDARD

"A party may move for summary judgment, identifying each claim or defense – or the part of each claim or defense – on which summary judgment is sought." Fed. R. Civ. P. 56(a). Summary judgment is appropriate where "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

The moving party bears the initial burden of demonstrating the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party satisfies its burden, the nonmoving party cannot rest on the mere allegations or denials of his pleading, but must "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file' designate 'specific facts showing that there is a genuine issue for

1  trial.'" *Id.* at 324. Moreover, "[e]ven if the standards of Rule 56 are met, a court has

2  discretion to deny a motion for summary judgment if it believes that 'the better course

3  would be to proceed to a full trial.'" *Firman v. Life Ins. Co. of North America*, 684

4  F.3d 533, 538 (5th Cir. 2012) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

5  242, 255 (1986)).

## IV.

## ARGUMENT

### A.   OMNI IS ENTITLED TO JUDGMENT AS A MATTER OF LAW ON ITS PRIMARY ASSUMPTION OF THE RISK DEFENSE

Aside from express assumption of risk, "there are two types of assumption

of risk: primary and secondary." *Shin v. Ahn*, 42 Cal. 4th 482, 489 (2007) (citing

*Knight v. Jewett*, 3 Cal. 4th 296, 308-09 (1992)). The California Supreme Court has

described primary assumption of the risk as follows:

> Under the primary assumption of risk doctrine, the defendant owes *no duty* to protect a plaintiff from particular harms arising from ordinary, or simple negligence. [Citation.] In a sports context, the doctrine bars liability because the plaintiff is said to have assumed the particular risks inherent in a sport by choosing to participate. [Citation.] Thus, "a court need not ask what risks a particular plaintiff subjectively knew of and chose to encounter, but instead must evaluate the fundamental nature of the sport and the defendant's role in or relationship to that sport in order to determine whether the defendant owes a duty to protect a plaintiff from the particular risk of harm. [Citation]."[2] *Shin*, 42 Cal. 4th at 489 (emphasis in original).

/ / /

---

[2]     In contrast to primary assumption of risk, "the secondary assumption of risk doctrine relates to the allocation of damages, not to the question of duty." *Shin*, 42 Cal. 4th at 498. "Once it has been established that a duty has been breached, … the general principles of comparative fault are applied to assign *liability* in proportion to the parties' respective fault. Thus, *primary* assumption of risk applies to the question of duty and *secondary* assumption of risk applies to the calculation of damages." *Id.* at 498-99 (emphasis in original).

The California Supreme Court has held that primary assumption of risk applies to the sport of golf. *Id.* at 497 (holding that being struck by a carelessly hit golf ball is an inherent risk of golf). While the bulk of California case law concerning golf course injuries involves golfers who were hit by errant golf balls, numerous courts outside California have applied primary assumption of risk to reject negligence and premises liability claims in circumstances similar to the instant action.

In *Egeth v. County of Westchester*, 206 A.D. 2d 502 (N.Y. App. Div. 1994), a golfer brought a negligence action against a golf course for injuries she sustained from walking over a low mound of earth located between the golf cart path and the playing area of the course. 206 A.D. 2d at 502. In affirming the trial court's grant of summary judgment in favor of the golf course, the New York appellate court agreed with the trial court's "conclusion that that the plaintiff, by voluntarily traversing this topographical feature of the golf course, assumed the risk of injury therefrom and is precluded from recovery." *Ibid.* (citations omitted). The court further found "that the terrain around the green was inherent to the nature of the golf course and that, under the circumstances, the plaintiff was not unnecessarily or unreasonably exposed to danger."[3] *Ibid.* (citations omitted).

In *Parsons v. Arrowhead Golf, Inc.*, 874 N.E. 2d 993 (Ind. Ct. App. 2007),[4] the plaintiff parked his golf cart on the cart path, exited the cart and retrieved his golf

---

[3]     The court in *Egeth* also noted that the plaintiff "was aware of the mound of earth having traversed it on a prior occasion[.]" 206 A.D. 2d at 502. Although California and New York both employ "a no-duty rule when analyzing sports injury claims" based on the primary assumption of risk doctrine, *see Pfenning v. Lineman*, 947 N.E. 2d 392, 401 (Ind. 2011), a plaintiff's subjective knowledge of a risk is not considered under California's primary assumption of risk doctrine. *Knight*, 3 Cal. 4th at 316. Thus, while Plaintiff had traversed the bridge between the sixth hole and seventh tee nearly 100 times before the incident, Omni recognizes this fact is not considered under its primary assumption of the risk defense.

[4]     *Parsons* was decided before the Supreme Court of Indiana eliminated the no-duty approach to assumption of the risk in Indiana. *Pfenning*, 947 N.E. 2d at 404 n.3. Given California employs the no-duty rule, however, *Parsons* remains instructive.

1    club. 874 N.E.2d at 994. The plaintiff then turned from the cart and stepped off the

2    cart path onto the green, which required him to "step down because of a drop

3    [between four and twelve inches deep] from the asphalt path to the ground." *Ibid.*

4    The plaintiff landed straight-legged and suffered a back injury. *Ibid.* The trial court

5    granted summary judgment in the golf course's favor, finding that "[plaintiff] was a

6    voluntary participant in the sporting activity of golf and thereby assumed the risk of

7    injuries as a result of all reasonably foreseeable parts of the game, including

8    traversing the grounds of the golf course." *Ibid.*

9         The Indiana appellate court affirmed, concluding as a matter of law that the

10   golf course owed no duty to prevent the type of injury that the plaintiff sustained. *Id.*

11   at 998. In addition to adopting the trial court's rationale, *id.* at 997-98, the appellate

12   court observed that "traversing the topographical features of a golf course is an

13   inherent part of the game of golf[,]" and that "[g]olf is played outside and requires

14   that players walk over grass and other natural conditions of the land on which the

15   course is located." *Id.* at 999.

16        In *Simon v. Hamlet Windwatch Dev., LLC*, 120 A.D. 3d 657 (N.Y. App. Div.

17   2014), after exiting his golf cart, and while walking to the rear of the cart to retrieve

18   his club, the plaintiff "stepped into an area of the cart path containing a depressed

19   drainage grate[,]" which caused him to fall forward and sustain an injury. 120 A.D.

20   3d at 657. The trial court granted summary judgment in favor of the golf course,

21   reasoning that "tripp[ing] on a depression associated with a drainage grate in a cart

22   path is the kind of condition and circumstance to which the doctrine of assumption

23   of risk applies[,]" which the New York appellate court affirmed based on the doctrine

24   of primary assumption of risk. *Simon v. Hamlet Windwatch Dev., LLC*, No.

25   360672010, 2013 WL 10154235, at *1-2 (N.Y. Sup. Feb. 14, 2013); *Simon*, 120 A.D.

26   3d at 657.

27        In *Bryant v. Town of Brookhaven*, 135 A.D. 3d 801 (N.Y. App. Div. 2016), a

28   golfer brought suit against a golf course after he slipped and fell on a wet wooden

railroad tie that lined a footpath on a golf course. 135 A.D. 3d at 802. While the trial denied the golf course's motion for summary judgment, the New York appellate court reversed and directed that the motion be granted based on the doctrine of primary assumption of the risk. *Ibid.*

The court noted that the risks inherent in a sport, like golf, include "the risks involved in the construction of the field, and any open and obvious conditions of the place where the sport is played." *Ibid.* (citations omitted). The court accordingly held "that slipping on the wet railroad tie was a reasonably foreseeable consequence of playing golf while the course was still wet from the morning dew[,]" and that "the injured plaintiff … assumed the risk of injury." *Id.* at 803. The court also rejected the plaintiff's argument that "overgrown grass camouflaged or hid the slippery condition of the railroad tie from view" because the plaintiff had testified "that, as he was approaching the footpath, he was looking '[a]head,' was not walking with his head down, but walking 'straight ahead,' and saw the footpath in front of him." *Ibid.*

In *Bockelmann v. New Paltz Golf Course*, 284 A.D. 2d 783 (N.Y. App. Div. 2001), the plaintiff golfer slipped and fell while crossing a wooden bridge at the defendant's golf course. 284 A.D. 2d at 783. The trial court denied the golf course's motion for summary judgment, but the New York appellate court reversed based on the assumption of risk doctrine. *Ibid.* In directing the trial court to grant the motion, the appellate court held that "the bridge, which provided golfers with a means of traversing a drainage ditch by cart or foot," is "an integral part of the golf course." *Id.* at 784.

As reflected in *Egeth*, *Parsons*, *Simon*, *Bryant*, and *Bockelman*, traversing the topographical features of a golf course is an inherent risk in golf. Such features include the golf cart path, the terrain adjacent to the path, and bridges. As part of playing golf, golfers are required to walk from golf cart paths to grass and across the "grass and other natural conditions of the land on which the course is located." *Parsons*, 874 N.E.2d at 999. On those courses with culverts and drainage channels,

1   such as the Legends Course, golfers also must cross bridges when playing golf.

2   *Bockelman*, 284 A.D. 2d at 783-84. Indeed, the risks inherent in golf include all of

3   those associated with the construction of the course. *Bryant*, 135 A.D. 3d at 802.

4     In a misplaced effort to avoid primary assumption of the risk, Omni expects

5   Plaintiff will argue that the defense does not apply to mere walking. (*See* Doc. 13-1

6   at 7:25-28.) Not only does this argument ignore the fact that Plaintiff was golfing

7   when he was injured, but walking from a golf cart parked on the cart path to the tee

8   box is also an inherent part of golf. *Hahn v. Town of Haverstraw, N.Y.*, No. 11 CV

9   1635(VB), 2013 WL 1680179, at *4 (S.D.N.Y. Apr. 3, 2013), *aff'd* 563 Fed. Appx.

10  75 (2nd Cir. 2014) (holding that "traveling from the tee to the green as part of [a]

11  round of golf[,]" whether by walking or by golf cart, is an inherent part of golf); *see*

12  *also Mangan v. Engineer's Country Club, Inc.*, 79 A.D. 3d 706, 706 (N.Y. App. Div.

13  2010) (recognizing walking down staircase from golf cart path to tee box is an

14  inherent risk in golf); *Barbato v. Hollow Hills Country Club*, 14 A.D. 3d 522, 522

15  (N.Y. App. Div. 2005) (finding walking on green to be inherent in golf); *Egeth*, 206

16  A.D. 2d at 502 (concluding that "voluntarily traversing" a low mound of earth located

17  between the golf cart path and playing area is an inherent risk in golf).

18    Omni also anticipates Plaintiff may attempt to defeat Omni's primary

19  assumption of the risk defense by claiming that the portion of the culvert in which he

20  stepped was somehow hidden from view due to overgrown grass. Similar to *Bryant*,

21  Plaintiff testified at his deposition that he was looking straight ahead at the tee box,

22  instead of looking down, when he stepped over the curb of the golf cart path and into

23  the culvert. (Green Decl., Ex. C at 64:20-65:1, 103:11-15); *Bryant*, 135 A.D. 3d at

24  802. Given Plaintiff was not looking down at the grass when he stepped over the

25  curb, the length of the grass is therefore immaterial. Moreover, when looking at a

26  photograph taken at the time of the incident, Plaintiff admitted at his deposition that

27  the area of the culvert in which he stepped was "absolutely" visible. (Green Decl.,

28  Ex. C at 111:19-22.) Plaintiff's injury is therefore foreclosed by primary assumption

1  of the risk.

2  ### B.   OMNI IS ALSO ENTITLED TO JUDGMENT AS A MATTER OF LAW ON ITS CONTRACTUAL ASSUMPTION OF THE RISK DEFENSE

3

4  "Express assumption occurs when the plaintiff, in advance, expressly consents

5  ... to relieve the defendant of an obligation of conduct toward him, and to take his

6  chances of injury from a known risk arising from what the defendant is to do or leave

7  undone." *Saenz v. Whitewater Voyages, Inc.*, 226 Cal. App. 3d 758, 764 (1990)

8  (internal citations omitted). "'A valid release precludes liability for risks of injury

9  within the scope of the release.'" *Anderson v. Fitness Int'l, LLC,* 4 Cal. App. 5th 867,

10  877 (2016) (internal citations omitted).

11  "While often referred to as a defense, a release of future liability is more

12  appropriately characterized as an express assumption of the risk that negates the

13  defendant's duty of care, an element of the plaintiff's case." *Eriksson v. Nunnink*,

14  233 Cal. App. 4th 708, 719 (2015); *see also* CACI 451 (jury instruction for

15  contractual assumption of risk defense). "'The result is that the defendant is

16  relieved of legal duty to the plaintiff; and being under no duty, he cannot be charged

17  with negligence.'" *Eriksson*, 233 Cal. App. 4th at 719 (italics and internal quotation

18  marks omitted).

19  ### 1.   Membership In A Club Binds A Member To The Club's Rules and Regulations, Including A Release Therein.

20

21  It is well-settled that the relationship between a club and its members, like

22  that between the Club at La Costa and Plaintiff, is contractual in nature, and that

23  the rules, regulations, and bylaws of such clubs establish the terms of such

24  contracts. *Cobb v. Ironwood Country Club*, 233 Cal. App. 4th 960, 965 (2015);

25  *Pollock v. Crestview Country Club Ass'n*, 41 Kan. App. 2d 904, 909 (2009);

26  *Spokoiny v. Washington State Youth Soccer Ass'n*, 128 Wash. App. 794, 801

27  (2005); *Post v. Belmont Country Club, Inc.*, 60 Mass. App. 645, 647 (2004). "The

28  'bylaws, and rules of private organizations create a legally enforceable agreement

in the nature of a contract between the organization and the member because of corresponding mutual obligations—by the member to follow the rules of the organization, and by the organization to fairly apply those rules.'" *Pollock*, 41 Kan. App. 2d at 909 (quoting *King v. Grand Chapter of Rhode Island*, 919 A.2d 991, 998 (R.I. 2007)). Moreover, "one who becomes a member of an association is deemed to have known and assented to its bylaws and 'cannot be heard to object' to the enforcement of the bylaws." *Spokoiny*, 128 Wash. App. at 801.

A member of a club is also bound by any exculpatory language contained in the governing membership documents. In *Post*, a country club was sued for wrongful death by the estate of a club member who died after a golf cart accident. 60 Mass. App. at 646. The trial court granted summary judgment in favor of the club based on release and indemnity language in the club's membership agreement, and the estate appealed. *Id.* at 645-46.

On appeal, the estate argued that the release and indemnity clause "was contained in a member's handbook among many other rules, regulations, and provisions; that the section was not highlighted, as other sections of the handbook were; and that there was no evidence that [the decedent] had ever read the provision or knew of its existence, either before he became a member of the club, or during the ten years of his membership." *Id.* at 647. The appellate court rejected the estate's arguments.

The court first noted the well-settled rule that when "[the decedent] became a member of the club, he entered into an obligation, in the nature of a contract, to be bound by the club's rules and by-laws, and accepted all obligations that were not inconsistent with law." *Ibid.* As to the purported lack of assent, the court "conclude[d] that in becoming a member of the club, [the member] should be charged with knowledge of the Club's by-laws and rules and regulations, and that his actual knowledge of the provision need not be shown in order that the provision apply." *Id.* at 648. The appellate court accordingly affirmed the judgment in favor

of the country club. *Id.* at 645, 654; *see also Martin v. Metropolitan Yacht Club, Inc.*, 388 Fed. Appx. 6, 7 (1st Cir. 2010) (affirming grant of summary judgment finding yacht club was not liable to damages to members' boats based on exculpatory clause in club's bylaws).[5]

2.   Plaintiff's Action Is Barred By The Release In The Club's Rules And Regulations.

As noted above, Plaintiff's membership at the Club is governed by the Club's Membership Plan and the Rules and Regulations, among other documents. (Irwin Decl. ¶ 11; Green Decl., Ex. C, Exs. 3, 5.) The Membership Plan advises prospective members to carefully review all membership documents. (Green Decl., Ex. C, Ex. 3 at 3.) Specifically, the Plan states that "[e]very person who desires to obtain a Signature Membership … should carefully read this Signature Membership Plan and all of the referenced documents and should seek professional advice to evaluate these documents." (*Ibid.*)

Referenced throughout the Membership Plan is the Rules and Regulations. (*Id.* at i, ii, 1, 2, 4, 5, 8, 9, 13, 15.) The Introduction of the Membership Plan expressly provides that "[t]he terms of Membership are described in this Signature Plan and in the Rules and Regulations." (*Id.* at 1.) The Membership Plan further states in relevant part:

---

[5]   The court in *Post* also recognized the mutual benefit that an exculpatory provision provides to the membership of a club. The court observed, "Given the extent of the membership and the expected use of carts during the golfing season, with the possibility that others might be injured and lay claim against the club, the indemnity clause was in fact more likely to have worked in [the decedent's] favor than not, shielding him and the other members from increased dues related to payment of claims or additional insurance costs." *Post*, 60 Mass. App. at 649; *see also Martin*, 388 Fed. Appx. at 8 ("The limit on liability is one of several terms of a compact of the members with each other to limit the cost of membership, and every prospective member who joins immediately shares in its benefits.") (footnote omitted).

> All Signature Membership classes will be subject to this Signature Membership Plan and the Rules and Regulations, as amended from time to time by the Club. By applying for a Signature Membership, the applicant agrees the Club may amend the Signature Membership Plan and Rules and Regulations and that his/her Signature Membership shall be subject to the Signature Membership Plan and Rules and Regulations. (*Id.* at 2.)

The Membership Plan also provides that "Signature Membership permits the Signature Member to use the Club Facilities in accordance with the terms of this Signature Membership Plan, such Member's Membership Application and the Rules and Regulations[] …." (*Id.* at 8.) The Plan similarly states that, "[i]f approved for Signature Membership in the Club, the Signature Member agrees to be bound by the terms and conditions of this Signature Membership Plan and the Rules and Regulations of the Club, as amended from time to time[] …." (*Id.* at 13.) The Plan also indicates that "[t]he Signature Member is acquiring a license to use the Club Facilities, subject to compliance with the Rules and Regulations of the Club and the provisions of this Signature Membership Plan." (*Id.* at 15.)

At his deposition, Plaintiff testified that he understood that the Club has rules and regulations, including at the time he applied to be a member, and that he understood, as a member of the Club, he was subject to such rules and regulations. (Green Decl., Ex. C at 30:5-15.)

The Rules and Regulations, which took effect on March 1, 2006, and to which Plaintiff is subject, contain a release and assumption of risk provision, which states in relevant part:

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

> Any Member … who, in any manner, makes use of or accepts the use of any apparatus, appliance, facility, privilege[6] or service whatsoever owned, leased or operated by the Owner, or who engages in any contest, game, function, exercise, competition or other activity operated, organized, arranged or sponsored by the Owner either on or off the Resort Facilities[7] shall do so at his/her own risk, and shall indemnify, defend and hold harmless the Club, [and] the Owner …, from any and all loss, cost, claim, injury, damage or liability sustained or incurred by him/her, resulting there from and/or resulting from any act or omission of the Club, [and] the Owner, … or arising out of or incident to Membership or use of the Resort Facilities. Additionally the Member shall indemnify and hold harmless the Owner, [and] the Club …, in respect to any such loss, cost, claim or injury, damage or liability sustained or incurred by the Member …. (Green Decl., Ex. C, Ex. 5 at 29-30, Art. VII.)

Plaintiff's action unequivocally falls within the ambit of the foregoing release. At the time of his injury, Plaintiff was making use of a privilege and facility at the Club by playing golf on the Legends Course. Plaintiff also claims an injury that resulted from an alleged action or omission of Omni. Specifically, the Complaint avers that Omni "carelessly and negligently inspected, repaired, maintained, owned, controlled, and marked the premises …[,]" which resulted in Plaintiff tripping and falling on the golf course. (Doc. 1-2, Ex. A at 4, 5 ¶¶ GN-1, Prem.L-1.) Plaintiff's injury also arises out of, and is incident to, both his membership at the Club and his use of the Legends Course. Pursuant to the release in the Rules and Regulations, Plaintiff therefore played golf at his own risk on the date of the incident, and he must indemnify, defend and hold harmless Omni from his resulting injury.

---

[6]     The Rules and Regulations define "privileges" as "the license to use the Club Facilities, activities and programs given to Members of the Club as set forth in the[] Rules and Regulations and as otherwise provided by the Club." (Green Decl., Ex. C, Ex. 5 at 3, Art. I, § 2, ¶ (bb).) "Club Facilities" include the Golf Courses, i.e., the Champions and Legends Courses. (Green Decl., Ex. C, Ex. 5 at 1, 2, Art. I, § 2, ¶¶ (f), (k).)

[7]     Among other facilities, the "resort facilities" consist of the "Club Facilities," which, as previously noted, include the Golf Courses, i.e., the Champions and Legends Courses. (Green Decl., Ex. C, Ex. 5 at 1, 2, 3, Art. I, § 2, ¶¶ (f), (k), (bb).)

3. <u>No Signature On Plaintiff's Membership Application Was Necessary To Bind Plaintiff To The Release In The Club's Rules and Regulations.</u>

Omni anticipates Plaintiff will contend that the release in the Rules and Regulations is not enforceable because he did not sign his membership application. The application notes that it, along with the Membership Plan and the Rules and Regulations, "represents the entire understanding between the parties …[,]" which is followed by a signature block for the applicant, as well as a place for the applicant to initial that he received and understands the Membership Plan and the Rules and Regulations. (Green Decl., Ex. C, Ex. 4 at 4.) That Plaintiff now asserts he did not sign the membership application is inconsequential.

As detailed above, Plaintiff's mere membership in the Club created a contractual relationship between Plaintiff and the Club, and Plaintiff is thus bound by the Club's Rules and Regulations as a matter of law. *Cobb*, 233 Cal. App. 4th at 965; *Pollock*, 41 Kan. App. 2d at 909; *Spokoiny*, 128 Wash. App. at 801; *Post*, 60 Mass. App. at 647. Moreover, the statement in the membership application that it, the Membership Plan, and the Rules and Regulations constitute the terms of the contractual relationship between Plaintiff and the Club does nothing more than reiterate the legal principles reflected in *Cobb*, *Pollock*, *Spokoiny*, and *Post*.

These same principles also do not require that Plaintiff receive and understand the Membership Plan, or the Rules and Regulations. Regardless of whether Plaintiff ever read the Rules and Regulations, knew of the existence of the release therein, or specifically agreed to the release through a signature or otherwise, Plaintiff is deemed to have assented to such rules and is charged with knowledge of the same. *Spokoiny*, 128 Wash. App. at 801; *Post*, 60 Mass. App. at 648.

Furthermore, Plaintiff's testimony in this action confirms that he understood the foregoing principles. As previously noted, Plaintiff testified that he understood that the Club has rules and regulations, and that, as a member of the Club, he was

1  subject to such rules and regulations. (Green Decl., Ex. C at 30:5-15.) The

2  governing membership documents, including the Rules and Regulations, were also

3  available at any time upon Plaintiff's request. (Irwin Decl. ¶ 11.) Plaintiff instead

4  elected not to request such documents because of his familiarity with rules and

5  regulations for other golf courses. (Green Decl., Ex. C at 31:8-15.)

6       Notwithstanding the fact that Plaintiff's membership in the Club, by itself,

7  binds him to the Rules and Regulations as a matter of law, California contract law

8  also does not require a contract to be executed in order to be enforceable. California

9  courts have explained as follows:

10      A "voluntary acceptance of the benefit of a transaction is
    equivalent to a consent to all the obligations arising from
11      it, so far as the facts are known, or ought to be known, to
    the person accepting." (Civ. Code, § 1589, see also Civ.
12      Code, § 1584 ["acceptance of the consideration offered
    with a proposal, is an acceptance of the proposal"]; *Grant*
13      *v. Long* (1939) 33 Cal. App. 2d 725, 736 ["[w]hile an
    express contract is one, the terms of which are stated in
14      words ... , one party may use the words and the other may
    accept, either in words or by his actions or conduct"
15      (citation omitted)].) *Vita Planning and Landscape*
    *Architecture, Inc. v. HKS Architects, Inc.*, 240 Cal. App.
16      4th 763, 773 (2015) (emphasis omitted).

17       Plaintiff has been a member of the Club since 2007, and he has enjoyed the

18  benefits of his membership since then. Plaintiff plays golf at the Club at least two

19  times per week and enjoys paying no green fees and no fees for a locker, golf cart,

20  or bag storage. (Green Decl., Ex. C at 14:25-15:10, 18:18-19:1,19:9-20:4, 22:1-7,

21  33:17-34:8.) Plaintiff, however, must also bear the burdens and obligations of his

22  membership. This includes the release contained in the Rules and Regulations,

23  which agreement Plaintiff has acknowledged he is subject to. Accordingly, the

24  purported absence of Plaintiff's signature on the membership application is

25  inconsequential. Plaintiff's action is thus barred by Omni's contractual assumption

26  of the risk defense.

27  / / /

28  / / /

4.      Plaintiff's Action Is Also Barred By The Release In The Club's Bylaws.

As noted above, Plaintiff's membership is also governed by the Club's Bylaws, which took effect in 2011. (Irwin Decl. ¶¶ 10-11, Ex. H.) The Bylaws "set forth the terms and privileges of membership in the Club and the policies and procedures under which the Club is operated." (Irwin Decl., Ex. H at 1, § 1.2.) The Bylaws further provide that "[t]he enjoyment of membership privileges by any person entitled thereto … is subject to the terms, conditions and restrictions of these Bylaws, the Rules and Regulations, and the terms of Member's Candidate Application" (*Id.* at 5, § 3.4.)

The Bylaws contain the following release and assumption of risk provision:

> While using the Facilities[8] … Members and their guests are charged with the responsibility of using proper judgment and caution at all times. Neither the Club nor the Operator assumes any liability for injuries caused to or incurred by any Member, user, or guest or for damage to property resulting from the use of the Facilities. In consideration of the privileges described herein, each Member and each person using the Facilities, equipment and amenities of the Club through a Member's membership, expressly agrees that **(i) all use of the Facilities, equipment and amenities is undertaken at the sole risk of the user, and neither the Owner nor the Operator shall be liable for any injuries or damages to any Member or any other persons; and (ii) none of the Owner, the Operator or their respective affiliates, officers, directors, shareholders, managers, members, agents and employees shall not be subject to and are hereby released and forever discharged from any claims or demands whatsoever, including, without any limitation, those claims or demands resulting from acts or omissions of active or passive negligence on the part of the Owner, the Operator or their respective affiliates, officers, directors, shareholders, managers, members, agents or employees**. (*Id.* at 18, § 8.3 (emphasis in original).)

The Bylaws also include a hold harmless and indemnification provision, which states in relevant part:

---

[8]      Among other facilities, the "Facilities" include "the two 18-hole golf courses," i.e., the Champions and Legends Courses. (Irwin Decl., Ex. H, at 2, § 2.1.)

1
2
3
4
5
6
7
8
9
10
11
12

**IN CONSIDERATION OF THE RIGHTS AND PRIVILEGES OF MEMBERSHIP, EACH MEMBER AGREES … TO BE BOUND BY THESE BYLAWS AND THE RULES AND REGULATIONS. FURTHERMORE, EACH MEMBER AGREES (I) TO HOLD HARMLESS THE OWNER AND THE OPERATOR AND THEIR RESPECTIVE AFFILIATES, OFFICERS, DIRECTORS, SHAREHOLDERS, MANAGERS, MEMBERS, AGENTS AND EMPLOYEES, (II) TO INDEMNIFY THE SAME FROM ANY CLAIM, LIABILITY OR LOSS WHICH RESULTS FROM OR IS CONNECTED WITH … ANY USE OF THE FACILITIES OR PREMISES …, INCLUDING BUT NOT LIMITED TO ANY CLAIMS OR DEMANDS WHATSOEVER RESULTING FROM ACTS OR OMISSIONS OF ACTIVE OR PASSIVE NEGLIGENCE ON THE PART OF THE OWNER, THE OPERATOR OR THEIR AFFILIATES, OFFICERS, DIRECTORS, SHAREHOLDERS, MANAGERS, MEMBERS, AGENTS OR EMPLOYEES**. (*Id.* at 19-20, § 8.7 (emphasis in original).)

13
14
15
16
17

Plaintiff's action is clearly encompassed within the foregoing provisions of the Bylaws. At the time of his injury, Plaintiff was using the Club's Facilities, specifically the Legends Course. Accordingly, no liability for Plaintiff's injury may attach to Omni. The Bylaws therefore also render Plaintiff's action barred by Omni's contractual assumption of the risk defense.

18
19
20

**C.    PLAINTIFF'S ACTION ALSO FAILS AS A MATTER OF LAW INSOFAR AS IT ALLEGES OMNI HAD A DUTY TO WARN PLAINTIFF ABOUT THE CULVERT BECAUSE THE CULVERT IS OPEN AND OBVIOUS**

21
22
23
24
25
26
27
28

Among other elements, a plaintiff asserting claims for negligence and premises liability must establish the defendant owed the plaintiff a legal duty of care. *Kesner v. Superior Court*, 1 Cal. 5th 1132, 1159 (Cal. 2016); *Jacobs v. Coldwell Banker Residential Brokerage Co.*, 14 Cal. App. 5th 438, 446 (Ct. App. 2017). The existence of a legal duty depends on the application of what are known as the *Rowland* factors, the most important of which is the foreseeability of harm to the plaintiff. *Rowland v. Christian,* 69 Cal. 2d 108, 112-13 (Cal. 1968); *Jacobs*, 14 Cal. App. 5th at 446.

/ / /

Significantly, "[f]oreseeability of harm is typically absent when a dangerous condition is open and obvious." *Jacobs*, 14 Cal. App. 5th at 446 (citation omitted). California courts have explained in relevant part:

> "Generally, if a danger is so obvious that a person could reasonably be expected to see it, the condition itself serves as a warning, and the landowner is under no further duty to remedy or warn of the condition." [Citation.] In that situation, owners and possessors of land are entitled to assume others will "perceive the obvious" and take action to avoid the dangerous condition. [Citation.] *Ibid.*

Among other allegations, the Complaint avers that Omni "carelessly and negligently … marked the premises …[.]" (Doc. 1-2, Ex. A at 4, 5 ¶¶ GN-1, Prem.L-1.) Insofar as Plaintiff alleges Omni had a duty to warn him about the culvert, through markings or otherwise, it is undisputed that the culvert is plainly open and obvious. As noted above, Plaintiff acknowledged at his deposition that the area of the culvert in which he stepped was "absolutely" visible. (Green Decl., Ex. C at 111:19-22.) Omni was therefore under no duty to warn Plaintiff regarding any alleged dangers associated with the culvert. Accordingly, summary judgment in favor of Omni is also appropriate on this basis.

## V.

## CONCLUSION

For the reasons set forth above, the Court should grant Omni's motion for summary judgment.

Dated:  January 15, 2021                BEST BEST & KRIEGER LLP


By:  /s/  Matthew L. Green
MATTHEW L. GREEN
WHITNEY R. BLACKHURST
Attorneys for Defendant
OMNI HOTELS MANAGEMENT
CORPORATION