**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ALLEN HARVEY ABOLAFIA,<br><br>　　　　　　　　　Plaintiff,<br><br>v.<br><br>OMNI HOTELS MANAGEMENT CORPORATION,<br><br>　　　　　　　　　Defendant. | Case No.:   19-CV-1923 W (KSC)<br><br>**ORDER (1) DENYING PLAINTIFF'S SUMMARY-JUDGMENT MOTION [DOC. 13] AND (2) GRANTING DEFENDANT'S SUMMARY-JUDGMENT MOTION [DOC. 24]** |

Pending before the Court are the parties' cross motions for summary judgment. The Court decides the matter on the papers submitted and without oral argument. See Civ. L.R. 7.1(d.1).  For the reasons stated below, the Court **DENIES** Plaintiff's motion [Doc. 13] and **GRANTS** Defendant's motion [Doc. 24].

**I.    BACKGROUND**

Plaintiff Allen Harvey Abolafia is a member of the Club at La Costa ("Club"), which is owned by Defendant Omni Hotels Management Corporation ("Omni").  (*Green*

1

*Decl.* [Doc. 24-3] Ex. B at B-3; Ex. C at 8–10.[1]) The Club offers golf, tennis, health, fitness, and social facilities and activities with the La Costa Resort & Spa. (*Irwin Decl.* [Doc. 24-2] ¶ 3.) The Club's facilities include two 18-hole golf courses known as the Champions and Legends Courses. (*Id.* ¶ 3.)

Abolafia became a Signature Member of the Club in late January 2007 after paying a $15,000 deposit. (*Green Decl.*, Ex. C at 8–10, 14, 16, 17; *Irwin Decl.* ¶ 4, Exs. A–E.) Eight months later, he upgraded his membership, which required payment of an additional $33,500 deposit. (*Green Decl.* ¶ 9, Ex. C at 14; *Irwin Decl.* ¶ 9, Ex. F.) His membership is governed by a number of documents, including the 2006 Amended and Restated Rules and Regulations ("Rules and Regulations"), and Amended and Restated Membership Bylaws ("Bylaws"). (*Irwin Decl.* ¶¶ 6, 7, 10.) Article VII of the Rules and Regulations is titled "Property Damage and Personal Injury" and contains a release and assumption of risk provision. (*Green Decl.*, Ex. C at 109–110.) The Bylaws also include a release and assumption of risk provision. (*Irwin Decl.*, Ex. H § 8.3.)

Abolafia is an avid golfer and estimates that between 2007 and 2017, he played golf at the Club two to three times per week, which amounts to over 500 rounds of golf. (*Green Decl.*, Ex. C at 7–8, 20–21.) As a member, Abolafia does not pay for green fees, a locker, golf cart, or bag storage. (*Id.*, Ex. C at 11–13.)

On August 29, 2018, Abolafia was playing golf on the Legends Course. (*Green Decl.*, Ex. C at 23, 29–30.) A concrete bridge with a slight arch crosses over a culvert that sits between the sixth hole and seventh tee box. (*Irwin Decl.* ¶ 12, Ex. G.) Construction of the bridge was completed on approximately May 1, 2017, after the previous wooden bridge was washed out during a storm. (*Id.* ¶ 12.) A raised curb runs the entire length of the bridge on either side. (*Id.*; *Green Decl.*, Ex. C at 142.)

---

[1] Page references for exhibits attached to Omni's motion and opposition are to the bates-stamped number only, without the letter. For example, "C-1" is referred to as "1".

During the game, Abolafia drove his golf cart along the cart path over the arched concrete bridge. (*Green Decl.*, Ex. C at 29.) Since its construction, Abolafia had driven over the bridge at least 65 times. (*Id.* at 27–28.) Instead of driving across the entire bridge before stopping, Abolafia parked at the bottom of the downward slope of the bridge. (*Id.* at 37–38, 138.)

Among his group of five golfers, Abolafia was the last to exit his golf cart. (*Green Decl.*, Ex. C at 27, 30, 32.) After exiting, he walked to the back of the cart to retrieve a golf club and then stepped over the raised curb lining the bridge to head straight toward the seventh tee box. (*Id.* at 32–35, 37, 138.) As he stepped over the curb, Abolafia was looking straight ahead toward the tee box and did not look down to see the ditch on the other side of the curb. (*Id.* at 34–35, 42.) As his foot landed in the ditch, it "became jammed into an area of the hole below the curb causing [him] to fall forward with [his] left foot and heal stuck in the hole." (*Abolafia Decl.* [Doc. 27-1] ¶ 4.) As a result, Abolafia suffered a ruptured left Achilles tendon and closed nondisplaced avulsion fracture of the calcaneal tuberosity. (*Id.* ¶ 6.)

On April 19, 2019, Abolafia filed this lawsuit in the San Diego Superior Court alleging causes of action for general negligence and premises liability. (*Compl.* ¶ 10.[2]) On October 2, 2019, Omni removed the case to this Court. (*See Notice of Removal.*) On April 27, 2020, Omni filed its First Amended Answer, and asserted six affirmative defenses, including contractual assumption of risk and primary assumption of risk. (*See First Am. Answer* [Doc. 12].)

Abolafia's summary-judgment motion challenges each of Omni's six affirmative defenses on the basis that they are either "not recognized under California law or there are not facts to support Defendant's affirmative defenses." (*Pl's Notice of Motion* [Doc. 13] 2:28–3:3.) Omni's motion seeks summary judgment on the basis that Abolafia's

---

[2] The Complaint is attached to the Notice of Removal [Doc. 1] as Exhibit A [Doc. 1-2].

3

causes of action are barred by the contractual assumption of risk and primary assumption of risk affirmative defenses.  (*Def's Notice of Motion* [Doc. 13] 2:8–11.)  Omni also argues that it did not have a duty to warn Abolafia about the ditch he stepped into because it was open and obvious.  (*Id.* at 2:11–12; *Def's P&A* [Doc. 24-1] 7:2–3.)

For the reasons discussed below, this Court finds the assumption of risk provisions contained in the Club's Rules and Regulations and Bylaws apply to Abolafia's causes of action.  Because those provisions bar Abolafia's causes of action, the Court need not address the other issues raised in the parties' motions.

## II.   LEGAL STANDARD

Summary judgment is appropriate under Federal Rule of Civil Procedure 56(c) where the moving party demonstrates the absence of a genuine issue of material fact and entitlement to judgment as a matter of law.  See Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  A fact is material when, under the governing substantive law, it could affect the outcome of the case.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Freeman v. Arpaio, 125 F.3d 732, 735 (9th Cir. 1997).  A dispute about a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson, 477 U.S. at 248.

A party seeking summary judgment always bears the initial burden of establishing the absence of a genuine issue of material fact.  Celotex, 477 U.S. at 323.  The moving party can satisfy this burden in two ways: (1) by presenting evidence that negates an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial.  Id. at 322-23.  "Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment."  T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987).

"The district court may limit its review to the documents submitted for the purpose of summary judgment and those parts of the record specifically referenced therein." Carmen v. San Francisco Unified School Dist., 237 F.3d 1026, 1030 (9th Cir. 2001). Therefore, the court is not obligated "to scour the record in search of a genuine issue of triable fact." Keenan v. Allen, 91 F.3d 1275, 1279 (9th Cir. 1996) (citing Richards v. Combined Ins. Co., 55 F.3d 247, 251 (7th Cir. 1995)).

If the moving party meets its initial burden, the nonmoving party cannot defeat summary judgment merely by demonstrating "that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986); Triton Energy Corp. v. Square D Co., 68 F.3d 1216, 1221 (9th Cir. 1995) (citing Anderson, 477 U.S. at 252) ("The mere existence of a scintilla of evidence in support of the nonmoving party's position is not sufficient."). Rather, the nonmoving party must "go beyond the pleadings and by her own affidavits, or by 'the depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Celotex, 477 U.S. at 324 (quoting Fed.R.Civ.P. 56(e)).

When making this determination, the court must view all inferences drawn from the underlying facts in the light most favorable to the nonmoving party. See Matsushita, 475 U.S. at 587. "Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, [when] he [or she] is ruling on a motion for summary judgment." Anderson, 477 U.S. at 255.

### III.   DISCUSSION

Assumption of risk can be express or implied. Saenz v. Whitewater Voyages, Inc., 226 Cal.App.3d 758, 762 (1990). "Express assumption of risk is a contractual matter and comes into play where the plaintiff, in advance, expressly 'agrees not to expect the potential defendant to act carefully ….'" Id. at 762–63 (quoting Coates v. Newhall Land & Farming, Inc., 191 Cal.App.3d 1, 7 (1987). It occurs "when the plaintiff, in advance, expressly consents " '... to relieve the defendant of an obligation of conduct toward him,

and to take his chances of injury from a known risk arising from what the defendant is to do or leave undone .... The result is that ... being under no duty, [the defendant] cannot be charged with negligence.'" Id. at 764 (citing Prosser & Keeton, Torts (5th ed. 1984) § 68, pp. 480-481; Coates, 191 Cal.App.3d at 8).

To be effective, the release must be clear, unambiguous, and explicit in expressing the parties' intent. Eriksson v. Nunnink, 233 Cal.App.4th 708, 722 (2015) (Cohen v. Five Brooks Stable, 159 Cal.App.4th 1476, 1485 (2008)). "Courts will not isolate seemingly broad language from its context, and will observe the rule of strict construction when reading such agreements." Saenz, 226 Cal.App.3d at 764 (citing Celli v. Sports Car Club of America, Inc., 29 Cal.App.3d 511, 518 (1972)).

"If a release of all liability is given, the release applies to any negligence of the defendant. It is only necessary that the act of negligence, which results in injury to the releaser, be reasonably related to the object or purpose for which the release is given." Eriksson, 233 Cal.App.4th at 722 (citing Cohen, 159 Cal.App.4th at 1485). "An act of negligence is reasonably related to the object or purpose for which the release was given if it is included within the express scope of the release." Id. (citing Benedek v. PLC Santa Monica, 104 Cal.App.4th 1351, 1357–1358 (2002).)

Here, Article VII of Omni's Rules and Regulations, titled "Property Damage and Personal Injury" provides, in relevant part:

> Any Member … who, in any manner, makes use of or accepts the use of any apparatus, appliance, facility, privilege or service whatsoever owned, leased or operated by the Owner, or who engages in any contest, game, function, exercise, competition or other activity operated, organized, arranged or sponsored by the Owner either on or off the Resort Facilities shall do so at his/her own risk, and shall indemnify, defend and hold harmless the Club, [and] the Owner …, from any and all loss, cost, claim, injury, damage or liability sustained or incurred by him/her, resulting there from and/or resulting from any act or omission of the Club, [and] the Owner, … or arising out of or incident to Membership or use of the Resort Facilities. Additionally, the Member shall indemnify and hold harmless the Owner, [and] the Club …, in respect to any such loss, cost, claim or injury, damage or liability sustained or incurred by the Member ….

(*Green Decl.*, Ex. C at 109–110.)  This provision is clear and unambiguous.  It applies to any member who "in any manner" uses any facility owned or operated by Omni, or who "engages" in any "game … or other activity operated" by Omni, and explicitly warns the member that he or she "shall do so at his/her own risk…."

There is no dispute that at the time Abolafia sustained his injury, he was a "Member" of the Club and was using one of the Club's facilities—the Legends Course.  Additionally, there is no dispute that Abolafia, as a Member, was engaged in the "game" of golf or, alternatively, an "activity" operated by Omni.  Under either of these two circumstances, Abolafia contractually assumed the risk of injury.

In his motion and opposition, Abolafia argues Article VII does not apply to him for a number of reasons.  First, he contends the provision does not apply because he did not sign the application.  (*Pl's P&A* [Doc. 13-1] 4:19–5:10; *Pl's Opp'n* [Doc. 24] 10:4–28.)  As Omni correctly points out, under California law, the Club's Rules and Regulations and Bylaws constitute a contract between the Club and each of its members.  See Cobb v. Ironwood Country Club, 233 Cal.App.4th 960, 965 (2015) (agreeing that defendant's "bylaws constitute a contract between the Club and each of its members. [Citation omitted.]").  This principle is particularly applicable in this case where it is undisputed that Abolafia has enjoyed the privileges of Club membership for over 14 years and has used the Club's golf facilities over 500 times.  Additionally, Abolafia acknowledged during his deposition that when he applied to become a Member, he understood the Club had rules and regulations and that he was subject to those rules and regulations.  (*Green Decl.*, Ex. C at 30.)  Abolafia also admitted he has been a member of "many clubs" and understands that "most clubs are very similar" in having rules and regulations that apply to its members.  (*Id.* at 31.)  Under these circumstances, the Court finds no merit in Abolafia's contention that the lack of signature on his membership application means he is not bound by the Club's Rules and Regulations.

In his opposition, Abolafia attempts to distinguish Cobb and other cases Omni cites on the basis that "none of those cases involved a California law governed release of

7

liability." (*Pl's Opp'n* 10:19.)  Cobb's relevance, however, is not in evaluating the validity of Omni's "release of liability," but about whether Abolafia's membership in the Club for 14 years means he is bound by its Rules and Regulations.  Under Cobb, it does.

Abolafia's argument is also unavailing for another reason.  Aside from the Rules and Regulations, the Club's Bylaws "set forth the terms and privileges of membership in the Club and the policies and procedures under which the Club is operated." (*Irwin Decl.*, Ex. H at Art. I § 1.2.)  The Bylaws further provide,

> In consideration of the privileges described herein, each Member and each person using the Facilities, equipment and amenities of the Club through a Member's membership, expressly agrees that **(i) all use of the Facilities, equipment and amenities is undertaken at the sole risk of the user, and neither the Owner nor the Operator shall be liable for any injuries or damages to any Member or any other persons**;

(*Id.* at Art. VIII § 8.3 (emphasis in original).)  This provision explicitly provides that in consideration for Abolafia's use and enjoyment of the Club's "privileges" for 14 years, he agreed to assume the "sole risk" in using all of the Club's "Facilities."  Under Section 2.1, those "Facilities" included the "two 18-hole golf courses…." (*Id.* at Art. II, § 2.1.)  For all these reasons, Abolafia's contention that the assumption of risk provisions do not apply to him because he did not sign the application lacks merit.

Next, Abolafia argues the assumption of risk provision in the Rules and Regulations does not apply because it "relates to injuries while in an athletic activity" and Abolafia was "walking" when he was injured. (*Pl's P&A* 5:25–27; *Pl's Opp'n* 12:20–21.)  But Article VII in the Rules and Regulations does not use the term "athletic activity."  Instead, the provision refers more generally to "other activity operated" by Omni.  Similarly, § 8.3 of the Bylaws does not refer to an "athletic activity."

Abolafia's contention that the assumption of risk provisions do not apply because he was "walking" also lacks merit.  As set forth in Ericsson, for the release to be effective "[i]t is only necessary that the act of negligence, which results in injury to the releaser, be reasonably related to the object or purpose for which the release is given…. An act of

8

negligence is reasonably related to the object or purpose for which the release was given if it is included within the express scope of the release." Id. 233 Cal.App.4th at 722. Because Abolafia's "walk" was directly related to his use of one of the Club's golf facilities, as well as his participation in a "game" or "other activity" operated by Omni, both Article VII of the Rules and Regulation and § 8.3 of the Bylaws bar Abolafia's claim.

Abolafia also contends that because the exculpatory provision in the Rules and Regulations does not refer to negligence, it only covers Omni's passive negligence, not its active negligence which is the basis for Abolafia's causes of actions. (P's P&A 6:11–17.) In support of this argument, Abolafia cites Burnett v. Chimney Sweep, 123 Cal.App.4th 1057 (2004). (Id.) But as Omni points out, Burnett goes on to clarify that "the 'active-passive dichotomy' is not 'wholly dispositive' of the issue" because "[w]hether an exculpatory clause 'covers a given case turns primarily on contractual interpretation, and it is the intent of the parties as expressed in the agreement that should control." Id. at 1066. As set forth above, the parties' intent as expressed in the assumption of risk provisions in the Rules and Regulations and Bylaws is that Abolafia agreed to assume the risk in using the Club's facility to play golf.

Finally, Abolafia contends the exculpatory provision in the Rules and Regulations is ambiguous because he "has alternative explanations for the waiver agreement's meaning." (Pl's Reply [Doc. 15] 4:24–25.) According to Abolafia, the provision's reference to "'other activity operated, organized, arranged or sponsored by Owner' required some action or participation by Defendant Omni Hotels, other than the normal golfing operation." (Id. 5:3–5.) Again, this argument is based on his insertion of language that is not found in Article VII. Specifically, Abolafia has invented the "requirement" that the Club engage in "action or participation … other than the normal golfing operation."

In summary, there is no dispute that as a Member of the Club, Abolafia has taken advantage of the Club's privileges by playing over 500 rounds of golf at the Club's golf

9

facilities. Under the Club's Bylaws, in consideration for his use and enjoyment of those privileges, he is bound by the Club's Rules and Regulations and Bylaws. Abolafia conceded as much during his deposition. Accordingly, the Court finds Abolafia's negligence and premises liability causes of action are barred by assumption of risk provisions in the Club's Rules and Regulations and Bylaws.[3]

### IV. CONCLUSION & ORDER

For the foregoing reasons, the Court **DENIES** Plaintiff's summary-judgment motion [Doc. 13] and **GRANTS** Defendant's summary-judgment motion [Doc. 24].

**IT IS SO ORDERED.**

Dated: March 2, 2021

Hon. Thomas J. Whelan
United States District Judge

---

[3] In light of these findings, the Court need not rule on the remaining issues raised in the parties' motions.